The Atchison, Topeka and Santa Fe Railroad Company

*v.*

Margaret E. Feehan, Admx.

*Filed at Ottawa November 29, 1893.*

1. Negligence—*declaration as to ordinance limiting speed of trains in a village.* In an action against a railroad company to recover for damages for killing plaintiff's intestate through negligence by the running of a train of cars through a village at a greater rate of speed than allowed by an ordinance of the village, the declaration, in alleging the ordinance, used the present tense, that there was, at the time of filing the declaration, nearly six months after the death of the intestate, an ordinance in force regulating the speed of trains: *Held,* that the allegation was defective, but that the defect was cured by the verdict.

2. Same—*instructions as to comparative negligence, when no error.* There is no prejudicial error in giving an instruction based on the doctrine of comparative negligence, when by it the jury are required to believe, from the evidence, that at the time of the injury, etc., "the deceased was in the exercise of ordinary care, viz., such care as a reasonably prudent person, under the circumstances, would adopt for the security of his person," and that the death of the deceased was caused by the negligence of the defendant.

3. Pleading—*when defect in declaration is cured by verdict.* Where there is any defect, imperfection or omission in any pleading, whether in substance or in form, which would have been fatal on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection or omission is cured by the verdict.

4. It will not be presumed that the judge would have directed the jury to find, or that the jury would have found, a verdict convicting the defendant of negligence in running its train in contravention of the village ordinance, without proof that it was in force at the time of the accident.

5. Evidence—*date of ordinance regulating speed of trains.* In an action against a railway company for negligence in running a train of cars at a prohibited rate of speed, resulting in the death of the plaintiff's intestate, a section of an ordinance of the village regulating the speed of the trains within the corporate limits was offered in evidence

and admitted. The authenticity of the ordinance was admitted, but the bill of exceptions failed to show its date or when it was passed, and the admission of the same was objected to upon various specific grounds, but not on the ground it was not in force at the time of the death of the intestate: *Held*, that the defendant, by admitting the authenticity of the book of ordinances, and in raising no question as to the date of the ordinance, raised a strong inference that the ordinance appeared by the book to have been in force at the date of the accident.

6. WITNESS—*impeachment, by showing contradictory statements.* The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he testified to at the trial, and if, on having his attention called, on cross-examination, to such previous statements, and the time, place and occasion upon which they were made, he denies or does not admit having made them, such previous statements may be proved by way of impeachment.

7. But if the witness admits the declaration or statements imputed to him, the proof on the other side becomes unnecessary, and the witness has an opportunity of giving such reason, explanation or exculpation of his conduct, if any there be, as the particular transaction may happen to furnish, and thus the whole matter is brought before the court at once. When the witness admits making the previous contradictory statement, no further proof of that fact is necessary.

8. INSTRUCTION—*to find for the defendant.* In an action by the personal representative of a deceased person, against a railway company, for negligently causing the death of the intestate, if there is evidence tending to support either of the charges of negligence, and tending to show that the deceased, at the time, was in the exercise of ordinary care, an instruction to the jury to find for the defendant is properly overruled.

9. Where several witnesses testified, with more or less positiveness, that a bell was ringing continuously while the train was approaching the crossing where the deceased was killed, and one or more witnesses who were in a position to hear testified that they did not hear the bell ring, it was *held*, that this was evidence tending to show no bell was rung, and sufficient to make it the duty of the court to submit that question to the jury.

10. SAME—*as to the relative weight of evidence.* On the trial of an action against a railroad company, based on its neglect to ring a bell or sound a whistle, the court refused to instruct the jury "that the affirmative testimony of witnesses that the bell was rung and the whistle sounded at a given time and place is of greater force and weight than the negative testimony of witnesses of no greater credibility, and who had no better opportunity of hearing that the bell was not rung or

the whistle sounded, or that they did not hear them :" *Held*, that the instruction was but a mere abstract proposition, and that there was no error in refusing to give the same.

11. Same—*repeating*. There is no error in refusing instructions, when, so far as they announce correct propositions of law applicable to the case, they are embodied in the instructions given.

Appeal from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Grundy county; the Hon. Charles Blanchard, Judge, presiding.

Mr. Edgar A. Bancroft, and Mr. S. C. Stough, for the appellant:

The court should have directed a verdict for the defendant. The burden was upon plaintiff to show that the deceased was not guilty of contributory negligence. *Railroad Co.* v. *Grimes*, 13 Ill. 585; *Dwyer* v. *Talcott*, 16 id. 300; *Kepperly* v. *Ramsden*, 83 id. 354; *Railroad Co.* v. *Hetherington*, id. 510.

The ordinance was improperly admitted. Ordinances must be specially pleaded. *Chumasero* v. *Gilbert*, 24 Ill. 293; *People* v. *Chicago*, 27 Ill. App. 217; *Railroad Co.* v. *Klauber*, 9 id. 613; *Baker* v. *Magnon*, id. 155; *Railroad Co.* v. *Wagner*, 19 id. 595.

Pleading over does not always cure a defective pleading. 1 Chitty's Pl. (13th Am. ed.) 681, 682.

Nor was the defect in the declaration cured by the verdict. 1 Chitty's Pl. 673; *Harding* v. *Cragin*, 8 Vt. 509; *Gould* v. *Kelly*, 16 N. H. 551; *Coal Co.* v. *Young*, 24 Ill. App. 235; *Wright* v. *Bennett*, 3 Scam. 258; *Culver* v. *Bank*, 64 Ill. 528.

Appellee's witnesses only negatively testify that they did not see the light or hear the bell or whistle, while the appellant's witnesses state positively that the bell was rung and the light was burning. The rule is familiar that positive evidence of this character is entitled to more weight than negative. *Railroad Co.* v. *Still*, 19 Ill. 509; *Railroad Co.* v. *Stumps*, 55 id. 367; *Railroad Co.* v. *Robinson*, 106 id. 142;

*Railroad Co.* v. *Gretzner,* 46 id. 74; *Wabash* `v.` *Hicks,* 13 Ill. App. 407; *Stitt* v. *Huidekoper,* 17 Wall. 384; *McKeeber* v. *Railroad Co.* 80 N. Y. 667; *Culham* v. *Railroad Co.* 60 id. 133.

Plaintiff was bound to prove that the negligence alleged caused the injury,—in other words, that the injury was the proximate result of the unlawful rate of speed. *Railroad Co.* v. *People,* 24 Ill. App. 562; 120 Ill. 667.

It is the absolute right of a cross-examining party to lay a foundation for impeaching a witness by interrogating him as to whether or not he has made contrary declarations on a former occasion, and where the proper foundation has been laid, it is the right of the party seeking to impeach the witness to introduce such impeaching evidence, and the exclusion of it will be error. Thompson on Trials, sec. 490; Greenleaf on Evidence, sec. 462; *Railroad Co.* v. *Ingraham,* 131 Ill. 659; *Presley* v. *Powers,* 82 id. 125; *Brown* v. `Railroad Co.` 125 id. 600; *Bressler* v. *People,* 117 id. 422; *Gardner* v. *Railroad Co.* 17 Ill. App. 262.

The admissibility of the discrediting testimony does not depend on the degree of variance between it and the subsequent testimony. If it differs in any material part, it is for the jury to determine what effect such difference in statements shall have on the witness' credit. *Tinklepaugh* v. *Rounds,* 24 Minn. 298; *Seller* v. *Jenkinz,* 97 Ind. 430.

The law is well settled that the plaintiff can not recover, unless, at the time of the accident, the deceased was in the exercise of due care for his own safety; and if the instruction was calculated to convey the idea to the jury that the plaintiff might recover, although the deceased was guilty of negligence which materially contributed to the injury, it could not be sustained. *Railroad Co.* v. *Fietsam,* 123 Ill. 518; *Railroad Co.* v. *Fay,* 16 id. 558; `Railroad Co.` v. *Hazzard,* 26 id. 373; *Railroad Co.* v. *Cragin,* 71 id. 177.

Mr. E. L. CLOVER, and Mr. GEORGE W. W. BLAKE, for the appellee:

The instruction as to the credit and weight to be given to the witness was properly refused. *Railroad Co.* v. *Robinson,* 106 Ill. 142; *Martin* v. *People,* 54 id. 225.

An omission to perform a duty imposed by statute is *prima facie* negligence. *Railroad Co.* v. *Terhune,* 50 Ill. 151; *Railroad Co.* v. *Geddis,* 33 id. 304; *Railroad Co.* v. *Gillis,* 68 id. 318; *Railroad Co.* v. *Barr,* 31 Ill. App. 61.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was an action on the case, brought by Margaret E. Feehan, administratrix of the estate of Edward Feehan, deceased, against the Atchison, Topeka and Santa Fe Railroad Company, to recover damages for the death of the plaintiff's intestate, caused, as is alleged, by the negligence of the defendant. The deceased was killed August 24, 1891, by one of the defendant's passenger trains, at a crossing of the defendant's railroad over one of the public streets of the village of Kinsman, in Grundy county. Kinsman is a small incorporated village, having about 150 inhabitants, and embracing within its corporate limits a territory 80 rods square.

Feehan, at the time of his death, was living over Meagher's store, which was a little over two blocks south of the crossing of Wilson street over the railroad. He was then employed by Meagher to deliver goods and collect milk throughout the surrounding country, and for that purpose, he was accustomed to drive about in a covered milk wagon.

The defendant had two trains passing through the village at about 7 o'clock in the morning, one an accommodation train which stopped at the station, and the other a fast vestibule train which did not stop there. On the morning in question, Feehan got into his milk wagon at Meagher's store and drove north to the Wilson street crossing, and as he was going on to the main track of the railroad, he was struck by the vesti-

bule train running at the rate of from twenty-five to thirty miles an hour, and instantly killed.

The declaration contains six counts. The first count alleges, generally, that the defendant, by its servants, carelessly and improperly drove and managed the locomotive engine and train, and thereby killed the plaintiff's intestate. The second count alleges a failure to give the statutory signal of the approach of the train by ringing a bell or sounding a whistle. The third count alleges the running of the locomotive engine and cars at a great and unlawful rate of speed within the limits of the village of Kinsman, in consequence of which the deceased was killed; "that the village of Kinsman was then and there an incorporated village, in conformity with and by virtue of the laws of the State of Illinois, and that section one of an ordinance of said village, entitled 'An ordinance regulating the speed of cars or locomotives upon a railroad,' is as follows, viz : 'Section 1. That no locomotive engine attached to any railroad passenger car shall be driven, propelled or run upon or along any railroad track within the village of Kinsman, at a greater rate of speed than ten miles an hour, nor shall any locomotive engine attached to any freight car be driven, propelled or run upon or along any railroad track within said village at a greater rate of speed than six miles per hour,' and that the said injury was occasioned by reason of the negligence of the defendant running its locomotive engine and train of cars at a greater rate of speed than allowed by said ordinance of said village."

The fourth count alleges an ordinance of the village, prohibiting railroad companies allowing a whistle on any locomotive engine to be sounded within the village, except necessary brake signals, and such signals as may be absolutely necessary to prevent injury to persons and property, and requiring a bell on each engine to be rung continually while running within the village, and alleging that a bell upon the locomotive engine in question was not rung within the

village as required by the ordinance, and that by reason of the negligence of the defendant in that respect, the deceased was killed.   The fifth count is, in substance, a combination of the third and fourth.   The sixth count alleges the erection and maintenance by the defendant upon its right of way of certain obstructions, so as to shut off the view of approaching trains, but as there is no averment that the acts therein complained of were in any respect negligent, it is manifest that no cause of action is stated in that count.

To this declaration, the defendant pleaded not guilty, and at the trial the jury found the defendant guilty, and assessed the plaintiff's damages at $3000.   The defendant thereupon entered its motion for a new trial, and also its motion in arrest of judgment, which motions were severally overruled, and judgment was entered upon the verdict in favor of the plaintiff for $3000 and costs.   On appeal to the Appellate Court, the judgment was affirmed, and the record is brought to this court by appeal from the judgment of affirmance.

The first proposition urged upon our attention is, that the trial court erred in refusing to instruct the jury that, under the evidence, the plaintiff was not entitled to recover, and that their verdict should be for the defendant.   Evidence was introduced at the trial applicable to two of the charges of negligence contained in the declaration, viz:    (1) the failure of the defendant to give the statutory warning of the approach of its train to the street crossing by sounding a whistle or ringing a bell, and, (2) in running its train at a rate of speed forbidden by the ordinance of the village of Kinsman.   If there was evidence tending to support either of these charges of negligence, and tending to show that the deceased at the time was in the exercise of ordinary care, and that the defendant's negligence caused the injury which resulted in his death, the instruction was properly refused.

As to the first of these charges of negligence, all that need be said is, that while several witnesses testified with more or

less of positiveness, that a bell was ringing continuously while the train was approaching the crossing, one or more witnesses who were in a position to hear, testified that they did not hear the bell rung. This was evidence tending to show that no bell was rung, sufficient to make it the duty of the court to submit the question to the jury. Whether the verdict was in accordance with the preponderance of the evidence is a question which we are not at liberty to consider, nor is it material as bearing upon the question of the propriety of the ruling of the court in refusing to give the instruction asked.

As to the other charge of negligence, viz., that of running the train at a rate of speed prohibited by the village ordinance, the evidence is undisputed that, at the time Feehan was killed, the train was running at least at from twenty-five to thirty miles an hour. That was clearly in excess of the maximum rate of speed prescribed by the ordinance. But it is claimed that there is a failure both of allegation and proof of an ordinance regulating the speed of trains in the village in force at the time of Feehan's death.

It can not be disputed that the count in which this charge is made is defective, and it doubtless would have been so held on demurrer. In alleging the ordinance, the present tense only is used, and the averment, when literally construed, is to the effect that at the date of filing the declaration, which was nearly six months after Feehan's death, there was in force an ordinance of the village of the tenor alleged. But we are of the opinion that the defect is one which is aided by verdict. The rule on this subject, as stated by Mr. Chitty, is as follows: "Where there is any defect, imperfection or omission in any pleading, whether in substance or in form, which would have been a fatal objection on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict,

14—149 Ill.

such defect, imperfection or omission is cured by verdict."
1 Chitty's Plead. (14th Am. ed.) 673; *Ladd* v. *Pigott*, 114 Ill.
647; *Barnes* v. *Brookman*, 107 id. 317; *Heiman* v. *Schroeder*,
74 id. 158; *L. S. & M. S. Ry. Co.* v. *O'Conner*, 115 id. 254;
*Keegan* v. *Kinnare*, 123 id. 280; *Barker* v. *Koozier*, 80 id. 205;
*City of LaSalle* v. *Porterfield*, 138 id. 114; *I. C. R. R. Co.* v.
*Simmons*, 38 id. 242.

In *L. S. & M. S. Ry. Co.* v. *O'Conner, supra,* the defect in
the declaration seems to have been identical with the one now
under consideration, and it was held to have been cured by
verdict. In *I. C. R. R. Co.* v. *Simmons, supra,* which was an
action on the case to recover damages for a personal injury,
the declaration contained no averment that the plaintiff was
in the exercise of proper care, and that omission was held to
be cured. In *Heiman* v. *Schroeder, supra,* which was a pro-
ceeding for the enforcement of a mechanic's lien, the petition
contained no sufficient averment that the time of furnishing
the materials, the performance of the work and the payment
therefor, were within the several periods prescribed by the
statute, and the defect was held to be cured.

There can be no doubt that the issue joined upon the alle-
gation of negligence in running the train at a rate of speed
prohibited by the ordinance, necessarily required proof of an
ordinance in force at the time, and it will not be presumed
that the judge would have directed the jury to find, or that
the jury would have found, a verdict convicting the defendant
of negligence in running its train in contravention of the pro-
visions of the ordinance, without proof that such ordinance
was then in force. The case is thus clearly brought within
the doctrine of the cases above cited.

The point that the record fails to show affirmatively that the
ordinance read in evidence was in force at the time of Fee-
han's death presents questions of perhaps somewhat greater
difficulty, but we are inclined to hold that the evidence in that
respect is not obnoxious to the objection made to it. The bill

of exceptions recites that the plaintiff offered in evidence sections 1 and 5 of an ordinance entitled, "An ordinance regulating the speed of cars or locomotives upon a railroad," from a book admitted to be the ordinances of the village of Kinsman, and the sections offered are then set out at length. It is then recited that the defendant objected to the admission of these sections in evidence, generally, and also specially to the first section "because it was not pleaded that it was in force at the time of the accident, nor that the speed was faster than permitted, nor that the accident resulted in consequence of the speed; and to the fifth section, that it was unreasonable." It then appears that the court sustained the objection to the fifth section and excluded it, but overruled the objection to section one, and that to that ruling, the defendant duly excepted.

It is true there is no recital in the bill of exceptions as to the date of the ordinance, but when the offer to read the ordinance was made, the book of ordinances was before the court and in the hands of counsel. To make the book competent as evidence in the case for any purpose, it must have purported to have been published, or at least to show that the ordinance in question was passed, before Feehan's death, so as to have been in force at that time. The book was admitted to be the ordinances of the village of Kinsman, and no objection to its competency as an instrument of evidence was made. This must be taken to be tantamount to an admission that it was competent.

It should also be noticed that, while several special objections were made to the admission of the sections of the ordinance offered, the objection that the ordinance was not in force at the date of the accident was not raised or even suggested. It can scarcely be doubted that the book showed upon its face the date of its own publication, or the date of the passage of the ordinance, or both, and it seems clear that those questions were brought sharply to the attention of counsel at

the time.   Their conduct then in admitting the authenticity of the book, and in raising no question in relation to the date of the ordinance, raises an inference almost if not quite as strong as direct and positive proof, that the ordinance appeared by the book to have been in force at the date of the accident.

As to the question of care exercised by the deceased for his own safety at the time he was killed, there is evidence in the record tending to show that he was in the exercise of due care. We also think that the evidence presented the question whether the negligence of the defendant was the cause of Feehan's death.   It follows that the peremptory instruction to the jury to return a verdict of not guilty asked by the defendant was properly refused.

The next contention, viz., that section one of the ordinance was improperly admitted in evidence, is sufficiently answered by what has already been said, and need not be further noticed.

Complaint is next made of the refusal of the court to give to the jury the following instruction asked by the defendant:

"The jury are further instructed by the court, as a matter of law, that the affirmative testimony of witnesses that the bell was rung and whistle sounded at a given time and place is of greater force and weight than the negative testimony of witnesses of no greater credibility, and who had no better opportunity of hearing, that the bell was not rung or the whistle sounded, or that they did not hear them."

The force and weight to be given to the testimony of the respective witnesses is a matter to be determined by the jury, and with which the court should not ordinarily interfere.   As said in *Martin* v. *The People*, 54 Ill. 225, "A court can hardly err in refusing to give any instruction which seems designed to influence a jury as to the credit to be given to particular witnesses."   It must be admitted that the rule that positive evidence of the character of that referred to in the instruction is entitled to greater weight than negative, is supported by re-

peated decisions of this court, and we are not disposed to hold that it would have been error if the court had given to the jury an instruction applying that rule to the testimony before them. But while this may be so, it does not follow that the refusal of such instruction was erroneous. Again it will be noticed that the instruction as asked is a mere abstract proposition, and as has been frequently held by this court, the refusal of such instructions is not error. *Devlin* v. *The People*, 104 Ill. 504. We are of the opinion then that the instruction was properly refused.

Complaint is made of the refusal of the court to give certain other instructions asked by the defendant. Without noticing those instructions in detail, it is sufficient to say, that so far as they announced correct propositions of law applicable to the case, they were embodied in substance in the instructions given.

The defendant also assigns for error the giving of the following instruction at the instance of the plaintiff:

"The court further instructs the jury, that if they further believe, from the evidence, that the deceased, Edward Feehan, at the time he was killed, was in some degree negligent in the manner in which he drove upon the railroad crossing, which contributed to his death complained of, this will not prevent the plaintiff recovering in the action if she is otherwise entitled to recover: *Provided*, the jury believe, from the evidence, that the defendant was also guilty of gross negligence contributing to the death of plaintiff's intestate complained of: *And provided, also*, that the jury further believe, from the evidence, that such degree of negligence of deceased, if any, was slight in comparison with the negligence of the defendant, if any, and that the negligence of the defendant, if any, was gross in comparison with that of the deceased, if any, and that such negligence of the defendant, if any, produced the death of the deceased complained of: *And provided, further*, that the jury also believe, from the evidence, that at the time of the death

complained of, the deceased was in the exercise of ordinary care, viz., such care as a reasonably prudent person, under the same circumstances, would adopt for the security of his person."

This instruction was apparently an attempt to state to the jury the doctrine of comparative negligence as laid down in *G. & C. Ry. Co.* v. *Jacobs*, 20 Ill. 478, and other cases in which the like rule was announced. It will be unnecessary to determine whether this principle was applicable in this case or not, or whether indeed, it has, since the decision of *Calumet Iron and Steel Co.* v. *Martin*, 115 Ill. 358, and the numerous cases in which the latter case has been followed, any place in the jurisprudence of this State. In no event could the giving of this instruction have been prejudicial error, for the reason, that by it, the jury were required to believe from the evidence, that at the time of the injury, etc., "the deceased was in the exercise of ordinary care, viz: such care as a reasonably prudent person, under the circumstances, would adopt for the security of his person," and that the death of the deceased was caused by the negligence of the defendant. It is apparent that this brought the case directly within the rule announced in the *Calumet Iron and Steel Co. case*, and numerous other later cases announcing the same doctrine.

Complaint is also made of the refusal of the court to admit as impeaching evidence, the testimony of witness Barney McMiniman taken at the coroner's inquest and subscribed by the witness. McMiniman seems to be the only witness who was present and saw the accident which resulted in Feehan's death, and in one respect his testimony before the coroner was in conflict with that given by him at the trial. On both occasions he claimed to have seen the covered wagon driven by Feehan as it approached and went upon the railroad track at the crossing where the accident happened. Before the coroner he testified that he did not see the driver, while at the trial he testified that he saw the backside of Feehan's hat;

that his head was turned, and that he saw the backside of his hat or of his head. But his attention being called to this discrepancy in his statements he admitted that he testified at the inquest that he did not see the driver, and explained that at that time he was still laboring under the excitement caused by the death of Feehan.

The credit of a witness may be impeached by proof that he has made statements out of court contrary to what he has testified at the trial, and if, on having his attention called, on cross-examination, to such previous statements, and the time, place and occasion upon which they were made, he denies or does not admit having made them, such previous statements may be proved by way of impeachment. But if the witness admits the declarations or statements imputed to him, the proof on the other side becomes unnecessary; and the witness has an opportunity of giving such reason, explanation or exculpation of his conduct, if any there be, as the particular transaction may happen to furnish; and thus the whole matter is brought before the court at once. 1 Greenlf. on Ev. sec. 462, and notes.

In this case, the witness having admitted making the previous contradictory statement, no further proof of that fact was necessary, and the defendant was in no degree prejudiced by the exclusion of evidence of the witness' testimony before the coroner. The whole matter, so far as it had any tendency to impeach the witness, together with his explanation, was before the court and jury, and the record of the coroner's inquest would have added nothing to the case thus made.

One other discrepancy between the testimony of the witness at the inquest and that given at the trial is insisted upon which in our opinion does not in fact exist, and that relates to the place where the witness was standing at the time of the accident. Before the coroner he testified: "I was standing on east warehouse approach at that time," while at the trial he testified that he was standing on the approach to Kane's ware-

house from Wilson street, which was on the west side of that warehouse. It is manifest, however, that when the whole evidence is considered, there is no conflict between these two statements. It appears that there were two warehouses at that time in the village of Kinsman, one west of the place of the accident, and the other situated east of that point, the latter being Kane's warehouse, which was situated east of Wilson street and south of the railroad. In testifying before the coroner that he was on the east warehouse approach, he evidently meant that he was on the approach to the east warehouse, which is quite in harmony with his evidence at the trial. There being no conflict in this respect between his testimony and his former statement, no ground for impeachment so far as that matter was concerned was laid, and there was no error in excluding evidence of his former statement.

Some other points are made which we do not deem it necessary to discuss, but after having carefully considered the whole record, we are able to find no error for which the judgment of the Appellate Court should be reversed, and it will accordingly be affirmed.          *Judgment affirmed.*