### Chicago & Alton Railroad Company v. Samuel Barnett, a Minor, by Thomas Barnett, his Next Friend.

1. ORDINARY CARE—*Approaching Railroad Crossings.*—A person injured by cars at a railroad crossing must show by reliable evidence that in approaching the crossing he was using ordinary care and caution for his safety, or he can not recover.

2. EXCESSIVE DAMAGES—*Verdicts, When Set Aside.*—Where it is apparent the jury were actuated by passion and prejudice, or some motive other than a desire to do justice between the parties, the verdict, if excessive, will be set aside.

**Memorandum.**—Action for personal injuries. In the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Declaration in case and plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 13, 1894.

EDWARD C. AKIN and GEO. S. HOUSE, attorneys for appellant.

WM. MOONEY and HALEY & O'DONNELL, attorneys for appellee.

Mr. Presiding Justice Lacey delivered the opinion of the Court.

Appellee sued appellant on an action on the case to recover damages for personal injuries received by him by reason of being run over by appellant's engine and train of cars at a highway crossing called Center street, in the city of Braidwood, or at the city limits, while appellee was driving a horse and buggy along the said street and across the appellant's railroad track at said point of crossing. The case was tried by a jury and resulted in a verdict for appellee for $12,000, and the court requiring a remittitur of $6,000, appellee remitted that sum and the court overruled appellant's motion for a new trial and rendered judgment for the last named amount. The declaration contained three counts, each one averring due care and caution of appellee in approaching and going on the railroad crossing over the highway with his horse and buggy, and that the appellant was negligent, first, in not ringing a bell or sounding a whistle and not keeping the same ringing or sounding until the crossing was reached, and in approaching the crossing at a high rate of speed, by means of which, while crossing on said highway, he was struck by the locomotive engine and was bruised and injured, etc.; second, that appellant ran its locomotive engine and train of cars at a high and dangerous rate of speed without giving sufficient warning of its approach to said crossing, and without guarding said crossing or providing any signal there of the approach of trains, and was thereby guilty of negligence, by reason of which the injury occurred, as charged in the first count; third, that appellant negligently suffered and permitted certain box cars to be and remain on its right of way near to said highway at the crossing of the said road, and while said box cars were so situated, ran a passenger train over its certain other tracks across the highway at a high and dangerous rate of speed, and appellee by reason of said obstruction and the presence of the box cars and the high and dangerous rate of speed, while crossing with his horse and buggy, was run over and injured as stated.

There was no guard or means of warning at the approach of trains to passers over this crossing provided, and from the nature of the situation none appeared to be required, and the rate of speed of the train of thirty-five to forty miles an hour did not seem to be unusual or dangerous in itself. The main point of contention on the trial was as to whether the whistle was sounded or the bell rung on the locomotive while it was approaching the crossing as and for the distance the statute requires, and whether any box cars were on the side track intervening between appellee and the approaching locomotive and cars on the main track while he was approaching the crossing so as to obstruct his view of the approaching train, and lastly whether he exercised care and caution in approaching the railroad crossing by looking out for the approaching locomotive and train. There is no contention of any errors of law having been committed by the court below which we regard of any importance, and we have only to deal with the questions of fact and whether the evidence is sufficient to support the verdict, both as to the main issues and the question of damages. It seems from the evidence that appellee was a youth of about fourteen years of age at the time of his injury, and had lived in the close vicinity of the crossing in question for a considerable length of time and was well acquainted with the crossing, the running of trains and the times the train arrived at the crossing from which the injury was received, called the "Hummer," and the time it crossed the crossing in question in the morning. The evidence shows that appellee resided with his parents north of the crossing, and on the morning of the 20th January, 1890, he, with his brother's horse and buggy, took the latter to a coal mine some distance south of this crossing, passing over it to the mine where his brother was at work as a coal miner, and on returning he was obliged to pass over the railroad crossing at the place where he was injured, and was there run over by the train, and the horse killed, the buggy smashed to pieces, and himself severely injured. The time when the train was due at the cross-

ing was 6:55 o'clock, A. M., and it was about five minutes behind time, therefore the injury occurred about 7 o'clock, A. M. The highway on which appellee was approaching the crossing runs in a southerly direction from the crossing, and in full sight of the railroad track for 150 yards, and there was nothing intervening between the highway of any consequence to prevent seeing an approaching train unless a train of cars stood on the side track south of and parallel with the main track on the same 100 feet right of way, and this was one of the contentions that the cars did so intervene.

In approaching the crossing the appellee would be required, in order to see a train approaching from the west, to change his position and reach his head out beyond the side curtains of the buggy. He says he stopped the horse and looked out about 300 feet before he reached the crossing and afterward before he reached the crossing he leaned toward the dashboard and looked again two or three times; he could not tell how far from the crossing; that the horse walked all the way. Appellee testified that but for the box cars intervening, he could have seen the approaching train, and that he heard no whistle. It appears from the evidence that the side and back curtains of the buggy were down and appellee muffled up with his cap drawn down and his coat collar up and the wind was blowing from the north in his face, and that it was a very cold morning. The only evidence of appellee's care is his own testimony, which is weakened and impeached by contradictory statements under oath, when he was a witness in his brother's case against appellant for the recovery for the value of the horse and buggy, in which he stated there was nothing to prevent his seeing the approaching train but a house occupied by Cooney, and did not then claim there were any box cars on the side track; appellee testified the horse, on approaching the crossing, was on a walk. In this he was contradicted by two or three other eye witnesses who testified he approached the crossing on a sharp trot and appeared to be intent on crossing the track ahead of the approaching engine. The witness is

contradicted in other material portions of his evidence by the doctor, who ordered or advised him not to carry his arm in a sling but to use it, he saying they told him to carry it in a sling. It seems to us the appellee failed to show by any reliable evidence that he used any care whatever; that he used any caution in approaching the railroad crossing. As to ringing the bell and sounding the whistle as the law requires of railroad companies while approaching a highway crossing, the evidence seems to signally fail to support appellee, who claims that was not done. While he produces some negative evidence to that effect, his witnesses testifying they did not hear it, the appellant produces the parties who testified they both rang the bell and sounded the whistle and several others who heard it. Positive evidence is entitled to greater weight than negative. This rule is well stated in A. T. & S. F. R. R. Co. v. Feehan, Admr., 149 Ill. 202.

The same preponderance seems against the contention that the box cars obstructed the view. To go over all the evidence and review it would render this opinion too long and we will not attempt it. The jury appears to have rendered its verdict against the manifest weight of the evidence both as to the facts in issue upon which the recovery should be based as well as to the measure of damages. It found for appellee the enormous sum of $12,000, of which the court below compelled appellee to remit one-half under pain of giving a new trial; this would no doubt cure this error provided the verdict was not still excessive after the remittitur. North Chicago Street Ry. Co. v. Wrixan, Admr., 150 Ill. 532. We still think the verdict is excessive, and are convinced that if appellee would follow the advice of the physicians and take his arm out of the sling and try to exercise it, the result would be greatly beneficial and probably render it a useful limb. The jury appeared to be actuated by passion and prejudice or some motive other than a desire to do justice between the parties.

The Circuit Court should have set aside the verdict and granted a new trial.

For this error the judgment is reversed and the cause remanded.