Day, J.
 

 There are three major grounds of error urged in this case: First, that the court should have directed a verdict upon the question of the contributory negligence of the plaintiff’s decedent; second, that the court erred in not admitting the written statement of the witness Isaman, made before the trial, to a representative of an insurance company acting on behalf of the plaintiff in error, Babbitt; third, it is claimed by plaintiff in error that there is no liability on the part of the owner of an automobile truck which, with its driver, is hired to a third party on an hourly basis, because such driver becomes the special servant of the hirer and relieves the general owner of liability for his negligent acts while in the service of the hirer.
 

 Of these in their order:
 

 Contributory negligence was not pleaded in the answer, but it is claimed by the plaintiff in error, that the same became an issue in the case and was squarely raised by the motion interposed by the plaintiff in error (defendant below) in his motion made for a directed verdict at the close of the plaintiff’s ease, wherein he, as the second ground of said motion, says: “That the proof conclusively shows that the decedent came to his death by reason of his own contributory negligence. ’ ’
 

 
 *183
 
 Contributory negligence, is generally a question of fact, although it may be, and often is, a question of law. The charge of the court upon the question of contributory negligence was: “As this case now stands you may consider whether or not the deceased was guilty of any negligence which contributed to the accident. If the decedent was negligent and this negligence directly contributed to the accident the plaintiff cannot recover.”
 

 The defendant below offered no testimony as to the accident and was unable to produce the driver of the truck (Walling) at the trial, nor was his deposition procured. Defendant therefore relied upon the cross-examination of the plaintiff’s witnesses for any facts he wished to develop as to the accident.
 

 From an examination of the record, we cannot say that the Court of Appeals erred in refusing to disturb the verdict upon the ground that the decedent was guilty of contributory negligence as a matter of law, such court having followed the rule laid down in
 
 McMurtrie
 
 v.
 
 Wheeling Traction Co.,
 
 107 Ohio St., 107, 140 N. E., 636, wherein it is said, in the first proposition of the syllabus: “Where any phase of the facts, as shown by the evidence upon the subject of contributory negligence, will warrant the inference that the plaintiff, at the time of the injury, was exercising due care, it cannot be said that plaintiff was guilty of contributory negligence, as a matter of law.” Nor do we find that the trial court violated the principle of
 
 C., C., C. & St. L. Ry. Co.
 
 v.
 
 Lee, Admr.,
 
 111 Ohio St., 391, 145 N. E., 843, in overruling the motion for a directed verdict.
 

 Under all the circumstances of the case, the turning to the left, the speed, the distance traveled after
 
 *184
 
 striking decedent, and other facts not necessary to detail, the question was properly submitted to the jury, and we see no error in the refusal of the Court of Appeals to reverse the judgment upon that ground.
 

 The second proposition for consideration is the refusal of the trial court to receive in evidence the written statement of the witness Isaman, tendered in conjunction with the cross-examination of the witness.
 

 Was the plaintiff in error prejudiced by such refusal? A careful reading of the testimony of Isaman discloses that the witness admitted making the written statement in question and answering the questions as therein set forth; so that the defendant below got the full benefit of the written statement by the admission of the witness. The contents of the statement were incorporated piecemeal in questions propounded to the witness, together with his answers thereto. In
 
 Chicago & E. J. Rd. Co.
 
 v.
 
 Crose,
 
 214 Ill., 602, 73 N. E., 865, 105 Am. St. Rep., 135, the precise question was passed on: “Refusal to admit a paper containing^ statements conflicting with the testimony of a witness is not prejudicial, where the witness admits that he signed the paper and the questions and answers are read from the paper by counsel in the presence of the jury.” Also, see
 
 Swift & Co.
 
 v.
 
 Madden,
 
 165 Ill., 41, 45 N. E., 979;
 
 A., T. & S. F. Rd. Co.
 
 v.
 
 Feehan, Admx.,
 
 149 Ill., 202, 36 N. E., 1036;
 
 Dickerson
 
 v.
 
 Henrietta Coal Co.,
 
 251 Ill., 292, 96 N. E., 225.
 

 The matter arose upon the cross-examination of Isaman, and, the witness having* admitted the contents of the written paper, nothing was to be gained
 
 *185
 
 by its introduction. We think the Court of Appeals was right in finding that there was no prejudicial error in the refusal of the trial court to admit the statement in writing in evidence. It was not contradictory of the witness, because he admitted saying what the statement signed by him showed that he did, and it would not contradict him and thus reflect upon his credibility any more than his admissions would do.
 

 The final question for determination, as stated in the brief of plaintiff in error, is whether or not “the driver of an automobile truck, who, with the truck, is hired to a third party on an hourly basis, becomes the special servant of the hirer, and relieves the general owner of liability for the negligent acts of such driver while in the service of the hirer.”
 

 An answer to this question must depend upon the species of contract between the owner of the truck and the party to whom it is hired.
 

 The arrangement whereby the truck and driver was hired to the Wester Coal & Supply Company was upon an hourly basis, the plaintiff in error testifying that he was engaged in .the general business of hauling all kinds and character of materials for hire. The record shows that Walling, the driver of the truck in question, was a regular employee of Babbitt, as driver, of the truck. Babbitt testified on cross-examination: “ Q. On September 16 when one of your trucks was being operated along East Indianola avenue what kind of work was it engaged in, what kind of hauling? A. Working for the Wester Coal & Supply Company. Q. What kind of hauling? A. Any kind of hauling they choosed to use it for. Q. Did you let out both truck and man?
 
 *186
 
 A. Yes, sir. Q. You paid your men did you? A. I paid them weekly wage. Q. You were paid for the use of the truck by the Wester Coal & Supply as to what quantities of supplies they desired hauled, that was a matter for them to indicate to your employee? A. Yes, sir. Q. And he was to— A. Carry out their wishes. Q. He was under your charge? A. No. Q. Did you not retain the power of employing and discharging the people who were operating your trucks? A. I did, yes, sir. Q. You paid your employees? A. I paid my employees. Q. And you directed your employees to do whatever they should be directed to do in the course of hauling? A. Yes, sir. Q. Materials for whomsoever should seek your services? A. Yes, sir. * * * Q. And subject to your direction and hours of continuing the work during the day until such time as the work was completed? A. That is except where he was hired out to some other company or some other individual to work for them, then he followed their directions. Q. You retained the control of this man with reference to payment and discharge and directing him where to go to do work? A. I retained that.”
 

 As to the compensation of Babbitt, received from those to whom he hired his truck and driver, the record shows: “Q. You had an understanding as to the rate you were to get? A. Yes, sir. * * * $2.50 an hour. Q. How was that hourly basis computed? * * * A. Wester required that the truck man punch a clock at his office at the starting time, when he arrived there. Q. And then he would continue to work and would he punch the clock when he got through? A. That is what Wester required. * * * Q. How did you base your charges against the Wester Com
 
 *187
 
 pany? * * * A. Well, the truck driver made out a time card for his own time. Q. Did he not make a time card in order that you might have a record of the use of that truck during the day? A. Where he worked. Q. And the number of hours he worked there? A. He put the approximate number of hours of time, I checked up with the man that used the truck. * * * Q. As I understood you to say * * * that it was his truck during the period he was employed by you, that each man had his own truck? A. Yes, sir. Q. And he remained in possession of that truck? A. Yes, sir. Q. That was your orders and instructions that each man should retain his truck and be responsible for the inspection and repair of it? A. Yes, sir. Q. He also was responsible to you for the operation of that truck? A. In what way do you mean? Q. What he did with that truck, it was up to him to answer to you for the truck? A. In a mechanical way, yes, sir. ’ ’
 

 Babbitt further testified: “Well, if anybody called me and wanted to hire a truck to work for them if it was excavation they did whatever this man that hired them told them to do. * * * Q. And so if he asked that the materials or supplies or whatever was being hauled be taken, whether inside of this city or outside of the city your truck driver was instructed by you to do all the courtesies and things which should be asked of him to do within the scope of his employment by you would it not, you would, your answer is yes? A. I was going to say he was instructed to do whatever this man wished of him. Q. It was your desire to serve the best interest of the person who requested your service? A. Yes, sir.”
 

 
 *188
 
 From the foregoing excerpts from the record, it is apparent that during the time the driver of the truck was working for the hirer he was to haul such material as he was requested to haul, and to such points as the same were to be delivered; that the driver was to compute the time from the “ringing in” of the card at the company’s office until the card was “rung out” at the same place; that the driver was required to record the character of the use of the truck and the materials hauled; that the driver was given a specific truck, which remained in his care throughout the period of his employment by the owner of the truck; that the driver was charged with the care, inspection, and mechanical condition of the particular truck with which he was intrusted, and was responsible for the mechanical operation of such truck. The right to employ, pay, and discharge the driver was at all times within the power of the owner of the truck, and it was for him to determine where the driver and the truck should be used.
 

 The crucial question then arises: Who was the master at the very time the negligent act complained of took place?
 

 It should be noted that under the contract between Babbitt and the Wester Coal & Supply Company the hirer of the truck had no voice in the selection or retention of the negligent servant, to wit, the driver of the truck; nor did such hirer of the truck have any voice or control in the mechanical condition, the upkeep, and the repair of the truck in question. (One of the averments of negligence in the petition is the failure to have said truck properly equipped with good and serviceable brakes, and failing to have thereon a horn or other warning, in serviceable con
 
 *189
 
 dition. No skid marks were on the pavement after the accident, indicating no hard holding or locking of the brakes.)
 

 The hirer of the truck could not discharge or remove the driver and put in his place one of his own employees in whose care he might have more confidence. In other words, the hirer of the truck had to accept the truck and driver furnished by the owner thereof as a unit. True, the hirer could control the place of origin of the load and the destination thereof, and probably had the power to indicate the route which should be traveled. But this record does not disclose that the hirer gave any directions as to route, whether the rate of travel should be fast or slow, or any direction whatsoever. So far as the record discloses, all of this was left in the discretion nf the driver of the truck, who was in the pay and subject to the discharge of the owner and was in mechanical control of the machine at the time of the accident and responsible to the owner of the truck for its proper mechanical condition.
 

 The record fails to show any instructions or orders given by the hirer, the Wester Coal & Supply Company, to the driver, Walling, as to the speed, direction of route, or anything else. Babbitt might have peremptorily ordered Walling to work elsewhere, and the supply company had no right to control Walling, the driver, so far as the record shows; as Walling was selected and paid by Babbitt and worked where Babbitt directed. The driver’s services and the use of the truck are what Babbitt was being paid for at the time of the accident. Both belonged to him as the owner, and Babbitt thus had the selection and control of the means of accomplish-
 

 
 *190
 
 ing the object of the contract between him and the Wester Coal & Supply Company. The hiring in this instance was not the hiring of the truck, distinct from the driver, or the hiring of the driver, distinct from the truck, but the hiring was of the unit, composed of the two. While the hirer acquired dominion and authority over the unit to designate the work that should be done, and direct the manner of doing it, he acquired no authority to direct how the truck should be driven, managed, or cared for, nor could he divide the unit by separating the driver from the truck. He might dispense with the services of the unit, the driver and the truck, but he could not discharge the driver and substitute either himself or another driver of his own selection. The safety and well-being of the truck was a matter of concern to the owner, and he retained entire control thereover, and to that end he did not part with the power to select or discharge the person in whose care and custody he placed the truck, to wit, the driver, Walling. The hirer did not have exclusive control of either driver or truck. In
 
 Densby
 
 v.
 
 Bartlett,
 
 318 Ill., 616, 149 N. E., 591, 42 A. L. R., 1406, it was decided: “The most universal and unfailing test in determining the relation of master and servant is where the control of the servant includes the power of discharge.” In an annotation of that case it is said, in 42 A. L. R., at page 1417:
 
 *191
 
 is shown to exist between the wrongdoer and the person sought to be charged, at the very time and in respect to the very thing out of which the injury arose; its application in any given case stands upon the control which the superior possesses, and which for the protection of third persons, he is required to exercise, over the conduct and activities of his subordinates;
 
 such power does not exist in a situation where the special employer has no voice in the selection or retention of the negligent subordinate.”
 

 
 *190
 
 “Obviously, therefore, when a servant in the general employment of one is loaned to another, it becomes necessary to ascertain who was the master at the very time the negligent act complained of took place; for the doctrine of
 
 respondeat superior
 
 applies only when the relation of master and servant
 

 
 *191
 
 See, also,
 
 Quinn
 
 v.
 
 Complete Electric Const. Co.
 
 (C. C.), 46 F., 506;
 
 Billig
 
 v.
 
 Southern Pac. Co.,
 
 189 Cal., 477, 209 P., 241;
 
 DuPratt
 
 v.
 
 Lick,
 
 38 Cal., 691;
 
 Higham
 
 v.
 
 T. W. Waterman Co.,
 
 32 R. I., 578, 80 A., 178.
 

 The fact that Babbitt profited by the service of his employee Walling and his truck distinguishes this case from that of
 
 Braun
 
 v.
 
 Averdick,
 
 113 Ohio St., 613, 150 N. E., 41, it appearing there, in the opinion, at page 616 (150 N. E., 42): “The owners allowed the driver to operate the truck, but exercised no control over the driver either in requiring him to perform the special service or in directing the manner of its performance; nor was the driver to receive any compensation from the owners. * * * It is clear that Braun
 
 &
 
 Kipp’s sole connection with the entire transaction was the charitable one of loaning their truck to the society. ’ ’ The case of
 
 Elms
 
 v.
 
 Flick,
 
 100 Ohio St., 186, 126 N. E., 66, involved the liability of a father for the negligence of a son while the son was using the family car for his own (the son’s) affairs, and was in no way acting for the father. That case is not in point with the case at bar.
 

 We are of opinion that the driver, Walling, was
 
 *192
 
 the servant of the owner of the truck at the time and place in question, and that the doctrine of
 
 respondeat superior
 
 applies in this case. This question has frequently arisen in the courts; in the days of horse-drawn vehicles as well as since the motor propelled vehicle became so common. By analogy the cases decided with reference to the owner of a horse-drawn vehicle, who lets the same, together with a driver, to others for compensation, may be carried into the law controlling the owner of an automobile truck who engages in the same practice. It has generally been held that one furnishing a vehicle, team, and driver, under a contract to do trucking or delivery for another, is alone liable for the negligence of the driver where the hirer has no control whatever over the driver otherwise than to direct when and where he shall go. Mr. Justice Moody states the matter succinctly in the often-cited case of
 
 Standard Oil Co.
 
 v.
 
 Anderson,
 
 212 U. S., 215, at page 222, 29 S. Ct., 252, 254, (53 L. Ed., 480), where, he says: “These principles are sustained by the great weight of authority, to which some reference will now be made. The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey, and, in a certain sense, directs it, still does not become the master of the driver, and responsible for his negligence, unless he specifically directs or brings about the negligent act. * * * Though even in such cases, if the exclusive control over the driver be in the hirer, he may be responsible as master.”
 

 The same principle is recognized in the cases of
 
 Quarman
 
 v.
 
 Burnett,
 
 6 M. & W., 499 (a leading
 
 *193
 
 case);
 
 Jones
 
 v.
 
 City of Liverpool,
 
 14 L. R., Q. B., 890;
 
 Driscoll
 
 v.
 
 Towle,
 
 181 Mass., 416, 63 N. E., 922;
 
 McNamara
 
 v.
 
 Leipzig,
 
 227 N. Y., 291, 125 N. E,, 244, 8 A. L. R., 480;
 
 Frerker
 
 v.
 
 Nicholson,
 
 41 Colo., 12, 92 P., 224, 13 L. R. A. (N. S.), 1122, 14 Ann. Cas., 730;
 
 Weaver
 
 v.
 
 Jackson,
 
 153 App. Div., 661, 138 N. Y. S., 609;
 
 Little, Recr.,
 
 v.
 
 Hackett,
 
 116 U. S., 366, 6 S. Ct., 391, 29 L. Ed., 652. See, also, 13 L. R. A. (N. S.), 1122, and cases cited in the note.
 

 A variety of facts aid in determining the true question, namely, in whose control was the driver at the time of the accident? Payment of wages; the right to hire or discharge; the right to direct the driver where to go and what to do; the custody and ownership of the truck or automobile; who was keeping the same in repair; who furnished gasoline and oil; whether or not such truck or automobile, together with the services of the driver, is let for a fixed compensation; whether or not exclusive control over the driver was in the hirer.
 

 All of these facts have a material bearing upon the ultimate question, to wit, who had the right to
 
 control
 
 the driver or servant and thus determine who is, in truth, the master? Was it the hirer or the owner?
 

 The following cases will sustain the position that, under circumstances such as disclosed by the record in the case at bar, the owner has been held liable for the negligent act of the driver, his servant, in the discharge of his duty for which he was employed, to. wit, to act as a driver of the truck or automobile of the owner, who, at the particular time, has let, at a fixed compensation, such driver and truck to some -third party who does not have exclusive control of
 
 *194
 
 the driver, but may direct him where to go and what to haul:
 
 Shepard
 
 v.
 
 Jacobs,
 
 204 Mass., 110, 90 N. E., 392, 26 L. R. A. (N. S.), 442, 134 Am. St. Rep., 648;
 
 Dubisson
 
 v.
 
 McMullin,
 
 163 Ark., 186, 259 S. W., 400;
 
 Hanrahan, Jr.,
 
 v.
 
 New York Edison Co.,
 
 212 App. Div., 295, 208 N. Y. S., 633;
 
 Charles, Admr.,
 
 v.
 
 Barrett,
 
 233 N. Y., 127, 135 N. E., 199;
 
 Billig
 
 v.
 
 So. Pac. Co.,
 
 189 Cal., 477, 209 P., 241;
 
 Densby
 
 v.
 
 Bartlett, supra; Lacombe
 
 v.
 
 Cudahy Packing Co.,
 
 103 N. J. Law, 651, 137 A., 538;
 
 Meyers
 
 v.
 
 Tri-State Automobile Co.,
 
 121 Minn., 68, 140 N. W., 184, 44 L. R. A. (N. S.), 113;
 
 Thayer
 
 v.
 
 Kirckhof,
 
 83 Colo., 480, 266 P., 225;
 
 Wagner
 
 v.
 
 Larsen,
 
 174 Wis., 26, 182 N. W.,
 
 336; Boroughf v. Schmidt
 
 (Mo. App.), 259 S. W., 881.
 

 Many cases are collected in the exhaustive note in 42 A. L. R., 1406
 
 et seq.
 
 See, also, 8
 
 A.
 
 L. R., 480, 484
 
 (McNamara
 
 v.
 
 Leipzig,
 
 227 N. Y., 291, 125 N. E., 244). The principle is generally recognized by text-writers on the subject: Huddy on Automobiles (8th Ed.), Section 201; Trial of Automobile Accident Cases, Schwartz, Section 324, and cases cited; Berry on Automobiles (6th Ed.), Section 1419, page 1186; 39 Corpus Juris, Section 1463, page 1277.
 

 The rule is well stated in the syllabus to
 
 Matlack
 
 v.
 
 Chalfant,
 
 69 Pa. Super. Ct., 49: “Where an owner of auto trucks hires them out at a per diem compensation, furnishing driver, oil, gasoline and accessories, and the driver is under the control of the owner during the entire period of hire, while the bailee cannot discharge the driver, and has no authority over him except to direct the place to which he shall drive, the owner is liable for an injury caused to a third person by the negligent act of the
 
 *195
 
 driver occurring during the period of hire, if the bailee has not interfered with the operation of the truck.” See, also,
 
 Wallace
 
 v.
 
 Keystone Automobile Co.,
 
 239 Pa., 110, 86 A., 699. To the same effect is the case of
 
 Funston
 
 v.
 
 Ingenito,
 
 282 Pa., 124, 127 A., 470.
 

 While cases reaching a contrary conclusion may be cited, we think that nearly all of the same may be distinguished upon the facts from the ease at bar, and that the great weight of authority sustains the liability of the owner where the hirer has not exclusive control of the driver.
 

 To recapitulate: Who hired and had the power to discharge the driver, Walling? Who paid his wages? Who profited by his services at the time he was driving the truck at the place in question? Who was the owner of the truck engaged in the business of letting the same for. hire, and who exercised all control over the same in its mechanical operation? The answer must be: The plaintiff in error.
 

 What does this record show as to the control of the hirer, Wester Coal & Supply Company, over the driver? Nothing, except that he was to haul certain material from one point to another. The record is utterly silent as to any exclusive control that the supply company had over the driver, Walling, or as to any interference by the Wester Coal
 
 &
 
 Supply Company with the driver. “When nothing is shown .as to the nature of the agreement between the owner of an automobile and a third person for whom work is being done, the presumption is that the driver is under the control of his employer, the owner.” Berry on Automobiles (6th Ed.), Section 1419, page 1186;
 
 Billig
 
 v.
 
 So. Pac. Co.,
 
 189 Cal., 477, 209 P.,
 
 *196
 
 241;
 
 Neuschaefer
 
 v.
 
 Colonial Sand & Stone Co.,
 
 180 N. Y. S., 413.
 

 We reach, the conclusion that the doctrine of respondeat
 
 superior
 
 must apply in this case, and that the driver, Walling, while engaged in his master’s service and within the scope of his employment, by his negligence, proximately caused the injury to the decedent; that such service was being rendered upon the orders of the employer, to whom he looked for his wages, and who alone had the power to hire and discharge him, although such service was then being rendered to a hirer who had no control over such driver except to direct him what to haul and where to take it.
 

 We think the Court of Appeals -was right in its conclusion in holding that the owner, plaintiff in error, was liable for the negligence of his servant, and its judgment in the premises will therefore be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Jones, Matthias and Allen, JJ., concur.