306

DANIELS, PLAINTIFF, v. THE MACGREGOR COMPANY, A CORPORATION, DEFENDANT.

Common Pleas Court, Hamilton County.

No. A-179897.  Decided January 10, 1964.

*Messrs. Lindhorst & Dreidame,* for plaintiff.
*Messrs. Rendigs, Fry, Kiely & Dennis,* for defendant.

RENNER, J. Plaintiff, Virgil A. Daniels, in this action seeks to recover damages for personal injuries which he sustained on June 11, 1960, when he fell from a ladder while he was engaged in work connected with the installation of light fixtures in a building occupied by The MacGregor Company, defendant herein.

Defendant has filed a motion asking the court to enter a summary judgment in its favor.

The pleadings, the deposition of the plaintiff and the affidavits supporting and opposing the motion for the summary judgment, and the stipulation filed December 24, 1963, reveal the following facts:

Plaintiff was employed by Manpower, Inc. Manpower, Inc. is a corporation that provides temporary help and business service to individuals and companies. Upon request Manpower dispatches the number of skilled or unskilled personnel asked for to the premises of those applying to perform whatever services are requested of them in keeping with their particular skill or work. The persons reporting to the job receive instructions from the customers as to what tasks are to be performed in and about the customer's premises.

Manpower retains the exclusive right to hire and discharge its employees and to determine which of its employees are to be assigned to its customers. It also reserves the right to

remove and to reassign its employees from one customer to another during the course of a workday.

Manpower is paid by its customers on the basis of a fixed rate for each man-hour of work performed by its personnel for the customer. The wages paid to Manpower's employees have no direct relation to the amount paid to it by its customers and Manpower's customers make no payments to its employees.

Manpower deducts from its employees' wages the income and social security taxes and similar deductions and no such deductions are made by its customers. Manpower also pays all Workmen's Compensation premiums and Unemployment Compensation payments for the protection of its employees and no such payments are made by Manpower's customers.

At the request of the defendant, The MacGregor Company, the plaintiff and four other employees were told by Manpower to report to the maintenance foreman of The MacGregor Company at its premises. They were instructed by Manpower to perform whatever services were requested of them under the specific direction of MacGregor Company employees. No equipment of Manpower was on the MacGregor's premises and all the equipment that was used by Manpower's personnel was the property of MacGregor. There is no evidence that during the period plaintiff was at work at The MacGregor Company that Manpower had any of its officers or employees on the premises of MacGregor to instruct, supervise or direct the work which Manpower's personnel performed for MacGregor.

In his deposition plaintiff's recollection was that he and the other Manpower employees had worked at The MacGregor Company all week, from Monday until Friday, when he was injured.

Plaintiff was paid by Manpower at the rate of one dollar an hour for the work performed by him at MacGregor.

Manpower, Inc., and the MacGregor Company each employed three or more workmen or operatives and were amenable to, and both of them were in compliance with the Workmen's Compensation Law of Ohio prior to and at the time Daniels was injured.

As a result of a claim made on behalf of the plaintiff through Manpower to the Ohio Bureau of Workmen's Compen-

sation, for the same injuries set forth in the petition herein, the plaintiff was receiving weekly compensation benefits from the state insurance fund up to the time his deposition was taken at Houston, Texas, on July 25, 1961.

Counsel for defendant contend that although Daniels remained the general employee of Manpower during the time he worked at MacGregor, he was before and at the time of his injuries, an employee of MacGregor and that MacGregor having complied with the Workmen's Compensation Laws, Daniels is precluded from maintaining this action by virtue of the provisions of Section 4123.74, Revised Code. In support of this contention they cite 35 American Jurisprudence, Section 541, at page 970, wherein it is stated that—

"The fact that a person is the general servant of one employer does not, as matter of law, prevent him from becoming the particular servant of another, who may be held liable for his acts. Indeed, as a general proposition, if one person lends his servant to another for a particular employment, the servant, for anything done in that employment, is dealt with as the servant of the one to whom he has been lent, although he remains the general servant of the person who lent him. * * *."
and *Halkias* v. *Wilkoff*, 141 Ohio St., 139 (25 Ohio Opinions, 257), in which the Court, at page 151, quoted from *Rourke* v. *White, Moss Colliery Co.* (Eng. L. R.), 2 C. P. Div., 205, as follows:

"* * * when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him.

"If the employer temporarily loans his general servant to assist the contractor, and the servant thereby comes under the control of the contractor, the original relation of master and servant ceases and the contractor alone is liable for the negligence of the servant while he has control of his movements."
and another case to the same effect, *Hartford Fire Ins. Co.* v. *Spieker*, 103 Ohio App., 455, 3 Ohio Opinions (2d), 493, syllabus paragraph 1 of which reads:

"Where the owner of a mobile crane in charge of employees of the owner loans the crane and employees to another for the performance of particular work to be carried out as directed by the person to whom the equipment is loaned, the employees are the servants of the latter, while the work is being performed, although they remain the general servants of the party who loaned them."

A motion to certify the record in that case was overruled.

None of the above cases involved the provisions of the Workmen's Compensation Act.

Counsel for plaintiff contend that the applicable Ohio authorities clearly demonstrate that Daniels, under the facts presented here, is not barred from maintaining this action. In support of this contention they cite *Trumbull Cliffs Furnace Co.* v. *Shachovsky*, 111 Ohio St., 791, as the leading case, and *George* v. *City of Youngstown*, 139 Ohio St., 591, 23 Ohio Opinions, 91, and *Babbitt* v. *Say*, 120 Ohio St., 177.

The syllabus in *Trumbull Cliffs* v. *Shachovsky* must be considered in the light of the facts in that case. There is nothing in the report of that case which suggests that Trumbull Cliffs had exercised any supervision or control of Shachovsky in connection with the work he was doing; in fact, Truscon Steel Co., his only employer was, at the time an independent contractor performing work for Trumbull Cliffs. Trumbull Cliffs made no claim that Shachovsky was its employee under the lent servant doctrine. It attempted to relieve itself from liability to Shachovsky on the theory that it was the employer of Shochovsky by virtue of the provisions of Section 1465-61 (3), General Code.

In the next case, *George* v. *City of Youngstown*, the city did not contend or attempt to prove that plaintiff was its employee under the lent servant doctrine. It attempted to avoid liability claiming that George, as an employee of the Works Progress Administration, was relegated to a claim for compensation under state or federal statutes providing therefor. The Supreme Court found that the plaintiff was not an employee of the defendant city and it approved and followed *Trumbull Cliffs* v. *Shachovsky, supra*, in affirming the judgment George had recovered against the city for its negligence.

The third case cited by plaintiff, *Babbitt* v. *Say*, was a wrongful death case in which the administrator of the decedent's estate recovered a verdict against Babbitt, the owner of a truck, for the negligent operation of the truck. At the time of the injury, which resulted in the death of plaintiff's decedent, the owner had hired out the truck and its driver as a unit at a stipulated price per hour which included gasoline, oil and truck, repair and maintenance.

The Supreme Court merely mentioned the truck owner's right of selection and discharge of his driver, Welling, as one of several factors. It took into consideration in reaching the conclusion that Babbitt, the owner of the truck, was the master of Walling at the time of the negligent act. There is nothing in the syllabus of the case or the court's opinion to suggest that the right of selection and discharge, in and of itself, fixed the liability of Babbitt. Such a rule would have abrogated the lent or rented servant doctrine in Ohio.

Few, if any, of the many cases in which the courts have applied the lent or rented servant doctrine present a greater degree of supervision, direction or control over an employee than that which was exercised by MacGregor over Daniels prior to and at the time he was injured.

Unless any of the provisions of the Workmen's Compensation laws prevented the application of that doctrine, at the time of his injuries, the status of Daniels was that of an employee of MacGregor. The only provision of the Compensation laws in effect at the time of plaintiff's injuries which had any bearing upon this question is the clause contained in Section 4123.01 (a) (2), Revised Code, which excluded "any person whose employment is but casual and not in the usual course of trade, business, profession or occupation of his employer," as an employee or workman.

The Supreme Court in *State, ex rel. Bettman, Attorney General,* v. *Christen*, 128 Ohio St., 56, laid down certain rules or tests to be applied by courts in deciding what constituted regular or casual employment under Sections 1465-60 and 1465-61, General Code. The provisions of those sections were relatively the same as Section 4123.01 (a) 2, and (b) 2, Revised

Code, in effect at the time in question herein. The syllabus of that case reads as follows:

"1. Sections 1465-60 and 1465-61, General Code, are in pari materia and must be construed together.

"2. Workmen are regular employees, within the purview of Sections 1465-60 and 1465-61, General Code, so long as they are hired to do work in the usual course of the trade, business, profession or occupation of the employer.

"3. In order that a person's employment shall be deemed to be in the usual course of the trade, business, profession or occupation of the employer, it must be employment for work of the kind required in the business of the employer and it must be in conformity to the established scheme or system of the business. Such scheme or system comprehends the nature of the enterprise, its organization, its personnel requirements and its methods of operation. The time for which such employment has continued is not controlling."

At page 61 of the Opinion the Court stated:

"Under the weight of authority as it now exists, the test as to what constitutes 'casual' employment is not the length of the employment, but the nature of the employment."

and, after citing a number of cases, the Court observed that—

"Under the general doctrine of these cases, the test is whether the employment was in the usual course of the employer's business. If so, the employment is held to be not 'casual'."

The affidavit of Carleton C. Anderson, Supervisor of Maintenance of The MacGregor Company, filed in support of defendant's motion, states that in June, 1960, he requested Edward Miller, then personnel manager of the company, to furnish four or five laborers to be added to their regular staff of two workers, for needed work in and about the premises. These laborers, including Daniels, who were furnished by Manpower reported directly to Anderson and were assigned to work with and under the direction and control of the regular staff of maintenance workers of The MacGregor Company.

The deposition of the plaintiff and the affidavit of Frank Menke, a regular maintenance employee of MacGregor, indi-

cates that Daniels and Menke were installing light fixtures in MacGregor's warehouse at the time plaintiff was injured. If Menke had been injured while engaged in this work, which was in the regular course of his employment and in furtherance of MacGregor's business, the company would have been relieved of liability to him in an action such as this by virtue of Section 4123.74, Revised Code.

Daniels had been at work on the MacGregor premises for only four days before the day he was injured but, during that period, he was engaged in the same kind of work which was being performed by the MacGregor maintenance employee in furtherance of the company's business.

Applying the tests adopted by the Supreme Court in *State, ex rel. Bettman,* v. *Christen, supra,* Daniels' status was not that of a casual employee; it was that of a regular employee of MacGregor, although he remained the general employee of Manpower. His right to proceed further in this action must, therefore, be denied by virtue of the provisions of Section 4123.-74, Revised Code.

So far as I have been able to ascertain there is no reported case in Ohio involving injuries to an employee of Manpower or any other company engaged in a similar business. Before closing, however, I wish to comment upon a decision of the United States District Court, Minnesota, in *St. Claire* v. *Minnesota Harbor Service, Inc.,* 211 Federal Supplement, page 521 (1962).

In that case the court granted the motion of the defendant for a summary judgment. The plaintiff, an ordinary manual laborer, was sent by Manpower, Inc. to clean the defendant's barge and while he was assisting in picking up a barge cover, the barge cover fell injuring the plaintiff. He sued the Harbor Service for the damages he sustained as a result of his injuries.

The court found that St. Claire was, at the time of his injuries, an employee of Harbor Service although his primary employer was Manpower. Section 176.05 of the Minnesota Workmen's Compensation laws contained provisions similar to Section 4123.01 (a) (2), Revised Code, excluding casual employes, whose employment is not in the usual course of the business of his employer.

314

The court also found that the Workmen's Compensation coverage of Manpower, which protected it from civil action by an employee under Section 176.04 and 176.05, inured to the benefit of the customers of Manpower. The theory advanced by the court was that Manpower and the other customers paid Manpower's Insurance premiums which, as a part of the overhead costs of Manpower, was reflected in the fees charged the customers for its services.

A comparison of Sections 176.04 and 176.05 Minnesota Statutes with Sections 4123.01 (A) (2), 4123.74, 4123.75 and 4123.77, Revised Code, discloses similar provisions denying an employee the right of civil action for damages against a complying employer, granting such right of action against a noncomplying employer and denying to such noncompliers certain common law defenses.

Counsel will please present an entry granting the motion for summary judgment and rendering judgment for the defendant at plaintiff's costs.