Bobinson, J.
 

 The parties will be referred to in this opinion in the relation that they occupied in the trial court rather than in the relation they occupy here.
 

 The record of plaintiff’s evidence in chief discloses that at the time of the happening, of the
 
 *394
 
 events out of which this action grew the highway at the point of crossing the tracks of the defendant company, known as Dignan’s Crossing, and for a considerable distance each way therefrom, ran substantially in a northerly and southerly direction; that the tracks of the defendant company crossed the highway in a southeasterly and northwesterly direction and extended in the same direction for a considerable distance each way; that the decedent approached the crossing from the south; that the train of the defendant company approached the crossing from the west on the northerly track; that the angle between that part of the highway upon which decedent was approaching and that part of the railway upon which the train was approaching was somewhat less than a right angle; that there was a hedge fence along the west side of the highway, south of the railway, extending up to the right of way, which up to the line of the right of way in a measure obscured the view of the decedent to the west; that the right of way was 100 feet in width and the track upon which the train was approaching was exactly in the middle thereof; that there were certain trees growing either upon the lands of Mr. Humphrey, west of the highway, or upon the right of way, substantially in the south line or fence line thereof, probably 100 feet from the highway, the boughs and leaves of which overhung upon the right of way to some extent, but that the view to the west in the direction from which the locomotive was approaching, if not for the whole distance between the northerly track and southerly line of the right of way at least for the greater portion thereof, was unobstructed for
 
 *395
 
 a distance of from one quarter to one-half mile; that the track was elevated above the highway, variously estimated from 12 to 15 feet; that the approach thereto from the highway began not more than 100 feet, nor less than 50 feet, south of the railway tracks, and was somewhat uneven in grade, constructed out of coarse stone; and that the approach was about 12 feet wide.
 

 The evidence further discloses that there were four people riding in the automobile; that the automobile belonged to the father of the decedent, and was being driven by the decedent; that the automobile was traveling at a speed of approximately 15 miles per hour; that as the automobile approached the right of way of the defendant company one of the occupants of the rear seat of the car warned the decedent to look out for the approach of a train; and that at a point after the automobile had passed the hedge which ended at the right of way, and a sufficient distance from the northerly track of the defendant company to enable the two occupants of the rear seat to thereafter escape from the car before the collision, one of the occupants of the back seat exclaimed: “My God, there comes a train!”
 

 The two survivors of the automobile party were witnesses at the trial, and testified that the decedent made no response to either warning, and that they did not observe him to look either to the right or the left; that he neither increased nor decreased his speed, but continued on to the point of collision at the same rate, approximately 15 miles per hour. The gear of the automobile after the wreck was found to be in intermediate position.
 

 
 *396
 
 The testimony also disclosed that the collision occurred on the 1st day of August, at approximately 6:15 p. m., on a clear day; that the decedent was a young man of approximately 18 years of age, in full possession of all his faculties; that the train was traveling at from 55 to 60 miles per hour; that no whistle was sounded or bell rung by the defendant company; that no watchman was maintained at the crossing, and no gates or automatic signals had been installed or maintained; and that the speed of the train was not diminished until after the collision.
 

 This was the state of the record at the close of the evidence of the plaintiff, when the motion was made by the defendant company for a directed verdict, which motion was overruled.
 

 Evidence having been introduced to the effect that the defendant company failed to sound a warning either by ringing of a bell or the sounding of a whistle, the motion admitted the negligence of the defendant in that respect and raised the question for the court’s determination whether the plaintiff’s evidence raised a reasonable presumption of contributory negligence on the part of the plaintiff’s decedent, directly contributing to his injury, and, if so, whether any portion of such evidence, given the most favorable interpretation of which it was reasonably susceptible in support of the theory of due care on the part of plaintiff’s decedent, tended to dispel that presumption. If so, it made a question of fact for the determination of the jury; if not, it made a question of law for the court.
 

 Traveling up a grade of coarse crushed stone,
 
 *397
 
 with an irregular rise of 12 to 15 feet in 50 to 100 feet, in second gear, at a speed of 15 miles per hour, the decedent could have stopped his car within a very few feet, if not instantly. The only obstruction to decedent’s view in the direction of the train being a small tree or a number of small trees in the south line of the. railroad right of way, 50 feet from the center of the northerly track, and approximately 100 feet west of the highway, his view was unobstructed in the direction from which the train was approaching, if not for the whole distance between the south line of the right of way and the point of collision, at least for a sufficient distance to enable an occupant of the rear seat of the automobile, who necessarily would not be able to see for an instant after decedent would be able to see, to shout a warning and thereafter escape in safety from the automobile and lift or drag his companion in safety from the automobile before it reached the point of collision. Had the decedent looked when he was at the point where the occupant of the rear seat of the automobile did, he could and would have seen the train, and from there on to the crossing the evidence discloses nothing to obstruct his view. On the contrary it affirmatively disclosed that there was nothing to obstruct his view. The elevation of the tracks could not obstruct it, rather the reverse. The momentum of the automobile in second gear up so steep a grade would be negligible. The time and space it took the occupant of the rear seat of the automobile to shout his warning, escape with his companion from the automobile, and overcome the momentum which his leap from the automobile traveling at the rate
 
 *398
 
 of 15 miles per hour would give, before reaching the northerly track of the defendant company, was ample time and space for decedent to have stopped the car, for the momentum of a man hurling’ himself from an automobile traveling 15 miles per hour would certainly carry him as far as momentum would carry an automobile with brake facilities traveling at that speed in second gear up a steep grade over a rough surfaced The fact that the occupant of the rear seat of the automobile did see, and did escape, together with the evidence as to speed, gear, grade, condition of approach and lack of obstruction to view, refuted every hypothesis that decedent could not have seen the danger, and did not have time to stop his automobile after he could have seen, before he reached the northerly track.
 

 The plaintiff’s evidence being such that it raised a presumption of negligence upon the part of the decedent, contributing directly to his injury, the burden was cast upon him to dispel that inference. He offered no such evidence. On the contrary no part of his evidence, given the most favorable interpretation of which it is susceptible, tended to show other than that he either did not look or that if he did look he saw and had time thereafter in the exercise of ordinary care to have stopped the automobile and prevented the accident. If he looked, and failed to see, he nevertheless was warned by the occupant of the rear seat of the automobile in sufficient time and at a sufficient distance from the crossing to have enabled him in the exercise of ordinary care to have stopped the automobile and prevented the accident.
 

 
 *399
 
 Much of the evidence of plaintiff tended to affirmatively prove the negligence of his decedent directly contributory to his injury, and none of it was inconsistent with such negligence. Therefore, at the close of plaintiff’s evidence the question of contributory negligence had not only been raised by plaintiff’s own evidence but had ceased to be a question of fact for the determination of a jury, and had become an ascertained fact for the application of the law thereto by the court.
 

 The overruling of the motion, therefore, was error. The judgment, of the Court of Appeals and of the trial court will be for that reason reversed, and this court will enter the judgment which each of the lower courts should have entered and render judgment for the defendant below, the plaintiff in error here.
 

 Judgment reversed, and judgment for plaintiff in error.
 

 Marshall, C. J., Jones, Matthias, Day, and Allen, JJ., concur.