NORENE BASHAM, RESPONDENT, v. THE PRUDENTIAL INSURANCE CO. OF AMERICA, A CORPORATION, APPELLANT.—113 S. W. (2d) 126.

Kansas City Court of Appeals. January 10, 1938.

*Thomas S. Gilchrist* and *Reinhardt & Schibsby* for respondent.

*William C. Michaels, Henry I. Eager* and *Robert E. Coleberd* for appellant.

*Michaels, Blackmar, Newkirk, Eager & Swanson* of Counsel.

SHAIN, P. J.—This is an action on an insurance policy wherein double indemnity is provided for death, if caused directly and independently of all other causes effected solely through external, violent and accidental means. However, death by suicide is by the contract specifically excluded as death by accidental means.

The plaintiff herein is the wife of the insured and beneficiary under the policy. The insured met his death by reason of a fall from a back porch on the third floor of an apartment building, wherein insured and wife lived in the second floor of said building.

The evidence discloses that the back porch of the second floor was entirely protected by lattice work but on the third floor the lattice work extended only three and one-half feet above the floor. There is a stairway leading from the porch on the second floor to the porch on the third floor. On the day of the fatality, the wife of the insured left the insured at the home on the second floor and went to the employment in which she was engaged.

The evidence is to the effect that the insured remained at home by reason of not feeling well.

There is evidence to the effect that, at a time after the wife left home, the insured was seen falling from the porch on the third floor striking the walk below; and that the insured died from injuries received in the fall.

There is no question of issuance of policy; that it was in full force and effect at the time; and that due proof of death, insofar as the principal sum of $500 is concerned, was made.

The policy, in question provides $500 coverage, with $500 additional if death be from conditions above set forth. The defendant company paid the straight $500 coverage.

The plaintiff, as beneficiary, brought this suit to collect the $500 provided as double indemnity. The defendant contests the claim on the alleged ground that the proof fails to show that death is result of accident within the meaning of the policy and in support of its position urges the suicide theory.

There was a trial before a jury and the verdict of jury was for plaintiff in the sum of $500. Judgment was duly entered for $500 and defendant has appealed.

## OPINION.

We will continue to refer to respondent as plaintiff and appellant as defendant.

The defendant's first claim of error is as to the refusal of the trial court to give a directed verdict for defendant.

1. Defendant urges as reason that the proof of death furnished it by plaintiff showed that insured committed suicide.

2. Defendant urges that the undisputed evidence and physical facts show that the insured committed suicide.

Under the general rule, the burden rests upon plaintiff to prove that the insured came to his death by accidental means. In other words, as applied to the case at bar, the burden rests upon the plaintiff to prove that the fall from the third floor was accidental. [Griffith v. Continental Casualty Co., 290 Mo. 455, 235 S. W. 83.]

The evidence is that the insured was seen falling from the porch above where he lived.

For what reason the insured went to the floor above is not revealed.

The evidence is that insured was seen in falling from said position to the ground and that he met his death by reason of the fall. The witness appears to not have known it was a man falling until so ascertaining after the body struck the sidewalk below.

We conclude that the above evidence, if not precluded by other facts and circumstances shown, justified the trial court in submitting the case to the jury.

The general rule is that where all of the facts and circumstances incident to the resultant death are in evidence and full details of all attendant circumstances giving the causal facts are given by eye wit-

nesses it follows that there can be no presumption against suicide. However in the case at bar there is no evidence from which it can be inferred that the movements of the deceased insured were voluntary movements. We have but the ultimate facts. No causal facts of how deceased fell are shown by the evidence. It follows that the cause and manner of deceased leaving the porch is conjectural. Under the circumstances a presumption against suicide arises. [Landau v. Pacific Mutual Life Ins. Co., 305 Mo. 542, 267 S. W. 370.]

The defendant herein urges that the documentary evidence overcomes the *prima facie* showing.

In support of its contention, the defendant urges that the plaintiff, in making proof of loss, secured and delivered the certificate of Dr. Owens, the coroner of Jackson County, Missouri. Said certificate gives immediate cause of death as "fracture of skull."

The doctor's certificate stated that the death was due to "suicide —jumped out of third floor."

The certificate further shows the doctor was called after the death.

Dr. Owens was not called as a witness. It appears that the matter was looked after by Dr. C. G. Leitch, who is chief deputy.

Dr. Leitch testifies that he was not at the scene of the accident; that he saw the deceased and that his examination was made at the funeral home where the body had been taken.

The doctor testified that he made out the death certificate from an examination of the body.

The original certificate of death is admittedly in the handwriting of Dr. Leitch. The doctor testifies that his findings and conclusions are based on his own interpretation.

The doctor's certificate says that death was due to suicide. The following question and answer in the examination of Dr. Leitch is significant: "But you yourself found nothing from your personal examination by which you could say that the man committed suicide? A. That is right."

The certificate of death, made out on a Missouri Board of Health blank, appears as an exhibit in the case and appears as made and filed July 10, 1936.

The certificate of Dr. Owens, coroner, is also filed as an exhibit. It is shown to be upon a blank form of the defendant company and is headed "Attending Physician's Statement" and is attested on the 21st day of January, 1936. The death of insured is shown as January 17, 1936.

As Dr. Owens states in his certificate that he was called after death, it follows that same cannot be strictly held to be the statement of an attending physician. It is evident that this certificate was made by Dr. Owens in his capacity as coroner and not as a physician who attended deceased before his death.

As to just how Dr. Owens came to the conclusions stated in the certificate is not disclosed. The two certificates are documentary. However, they are not based upon any showing of facts that appear to justify a conclusion as to suicide.

The defendant urges that because the certificate of Dr. Owens was furnished by plaintiff it must be considered in the light of being uncontradicted, unexplained and constitutes a binding admission as to the death being due to suicide.

It is the law of this State that proof of death is properly admitted as admission against interest. However, such proof is subject to explanation and contradiction. [Egan v. Prudential Ins. Co. of Am., 107 S. W. (2d) l. c., pars. 2-3, page 137.]

The statements contained in proofs of loss are *prima facie* only. However, such statements are not treated as conclusive when there are other facts that explain or contradict the statement so as to relieve the statement. [Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S. W. (2d) 333.]

Insofar as the statement of Dr. Leitch is concerned, there is no evidence that plaintiff ever had anything to do with securing same. In other words, same was not submitted by her as proof of loss and the photostatic copy marked Exhibit B was introduced in evidence by the defendant and it appears the copy was made from the document as found in Missouri Board of Health office, in Jefferson City, Missouri.

It is disclosed that the plaintiff herein, on January 23, 1936, went to the office of defendant and made the usual affidavit required of the beneficiary in the policy. In this instrument, the name of deceased is given and time of death is also given. This document was put in evidence by the defendant and there is nothing therein that states as to cause of death as suicide. There is further shown an identity statement, made on defendant's blank, and signed by Alma E. Marquise and therein is no statement as to suicide.

An agency certificate is also shown in evidence where the agent of the company expresses that he is satisfied that the deceased is person insured and recommends payment. Therein suicide is not mentioned.

The defendant introduced the statement of Dr. Owens, referred to above, in evidence.

We conclude that there is nothing in the documentary evidence signed by Dr. Leitch that binds plaintiff. Neither is there anything in claimant's statement, identity statement or agency certificate that presents any admission as to suicide.

As to just when Dr. Owens' statement came into the possession of defendant is not clearly shown. On the margin of same is noted "DEF. EX. 4 JAS. A. SPELLMAN JUL 10 1936", and stamped on the face is: "ORDINARY CLAIM DEPARTMENT JAN 27 1936".

Giving to plaintiff the most favorable inferences from the testimony, she went to the claim department and signed claimant's statement, and as to what occurred plaintiff is not clear. She testifies that she doesn't remember whether or not she was asked to get anything further.

Dr. Owens' certificate is marked and referred to as Exhibit F.

During the cross-examination of plaintiff, she was asked concerning her testimony given in a deposition. As pertinent to Exhibit F, the following questions and answers are shown.

"Q. You remember when I took your deposition I had some instruments marked and showed them to you and you identified them, didn't you? A. Yes, sir.

"Q. All right. I am going to have them marked here. (Marked exhibits E, F, G and H.) Now then, Mrs. Basham, when you made claim for the proceeds under this policy you went to the office of the Prudential in the Bryant building, didn't you? A. Yes, sir.

"Q. And I believe a Mrs. Marquise accompanied you there? A. Yes.

"Q. And what is your father's name? A. Clarence Ireland.

"Q. And what is your cousin's name? A. Howard Ireland, I suppose is who you are referring to.

"Q. Either Howard Ireland, your cousin, or your father went to the office of Dr. Owens and obtained a death certificate for you, didn't they? A. Yes.

"Q. And either your father or your cousin delivered it to you? A. Yes.

"Q. And you delivered that death certificate to the office of the Prudential in the Bryant building at the time you signed your claimant's statement? A. As far as I can remember.

. . . . . , . . .

"Q. And you testified that either your cousin or your father went to the office of Dr. Owens and got a statement and you delivered that at the office in the Bryant building? A. As far as I remember.

"Q. And I call your attention to this, it is marked exhibit F, and was marked defendant's exhibit 4 by the reporter who took your deposition. This is the instrument, isn't it? A. Yes."

Pertinent to Exhibit F, the following questions and answers appear in redirect examination.

"Q. (Mr. Reinhardt) Well, did you get this document yourself? A. I didn't get this myself.

"Q. Did somebody ask you to get it? In other words, did anybody in the office of the Prudential Life Insurance Company ask you to get what is known as a death certificate.

"Mr. Colebird: That is objected to as repetition.

"The Court: Yes.

"Mr. Reinhardt: I just want to be clear about it. A. I don't remember.

"Q. You said in response to a question of counsel for the defendant that your father got this document? A. As far as I can remember he got them.

"Q. Did you ever read it before your deposition was taken? A. I think I did. I don't just remember."

The defendant, outside of exhibits put in evidence on cross-examination, placed one witness on the stand in connection with photographs taken of the rear of the apartment house from which insured fell. The defendant offers no further evidence concerning Dr. Owens' statement (Exhibit F) other than was elicited on cross-examination of plaintiff.

As to Exhibit F, we conclude that the statement "death due to suicide" can have no probative value, as to the establishment of the fact as stated, for the reason that the document itself shows a conclusion that does not conform to the testimony in the case, and the document wherein the conclusion is found is untrue as to its being statement of an attending physician and is out of harmony with fact, being called after death. There is no evidence to the effect that deceased jumped from the third floor and the document itself fails to show that Dr. Owens was in a position to know what happened.

The only evidence as to how Exhibit F came into the hands of the defendant is the evidence educed from plaintiff on cross-examination.

Giving to her evidence the most favorable inference, the statement of the doctor was gotten by her father or cousin going to Dr. Owens for same; that, insofar as she remembers, she took same to plaintiff and she says she thinks she read the statement, but doesn't remember.

It is significant that the defendant, who introduced Exhibit F, shows no attempt to get Dr. Owens as a witness and there is no evidence offered upon the part of defendant as to the facts and circumstances of how the exhibit came into their hands.

We cannot infer, from any evidence before us, that the plaintiff, with full knowledge and understanding of the contents of Exhibit F, went to the trouble of securing same and voluntarily delivered same to defendant as a binding admission that her husband committed suicide.

There is much evidence in this case that negatives a suicide theory. The homelife is shown as not conducive of suicide. The acts and demeanor of deceased but shortly before he met his death negative the theory of suicide.

Dr. Owens, if he had been called as a witness, under his own statements as contained in Exhibit F, would not have been permitted to testify that in his opinion the death was due to suicide.

In other words, in the doctor's statement, "Death due to suicide —jumped out of third floor," is not deducible from the very facts

stated by him, and further, such statement is not deducible from any fact in evidence.

We feel that courts should take common knowledge of the fact that the beneficiaries in insurance policies are frequently unaware of the legal effect of steps taken by them in making proofs of loss. It is shown in the case at bar that plaintiff, in the proceedings wherein Exhibit F was obtained, had no attorney; that she was at the agency of defendant, signing papers that were made out and which she was asked to sign.

Under all of the facts and circumstances shown in evidence, we conclude that the evidence does not justify the conclusion that the turning over, if so, by the plaintiff of the certificate attested by Dr. Owens constitutes a binding admission that the insured committed suicide. In other words, the circumstances in evidence so explain the situation, and the statement of Dr. Owens is clear as to showing that he was not the attending physician, and further, that he was shown not to have been in a position to have observed any act of the deceased so as to draw any conclusion from his own knowledge. We conclude that his statement is not conclusive on plaintiff.

We therefore find no error in the court refusing defendant's instruction in the nature of a demurrer to the evidence.

Defendant's second and last assignment of error claims error as to the giving of plaintiff's instruction No. 2, which instruction is as follows:

"The court instructs the jury that under the law you cannot indulge in mere speculation or conjecture that the deceased came to his death by suicide and in the absence of evidence that the deceased committed suicide the presumption is that the deceased did not commit suicide. And if you find and believe from all the evidence in the case, that the deceased did not commit suicide as defined in these instructions, and if you further find the other statements submitted in instruction number one, to be true, then your verdict should be for plaintiff."

The defendant's objection goes to the presumption against suicide.

There has been much discussion as to presumptions of law and of fact, both in court opinions and text book writings. Some have gone so far as to deny even the classification, holding that no distinction exists. However it is generally accepted that there is a distinction and such distinction is tersely stated: A presumption of fact may be, a presumption of law must be, regarded by the trier.

The presumption against suicide is one of law. We conclude that in a case wherein there are no facts from which an inference may be drawn, for or against, then the presumption against suicide must be regarded by the trial court. Under such an existing state of fact, we conclude that it was not error to instruct the jury as a matter of law that the presumption is that the insured did not commit suicide.

In the case at bar, the question is presented from an entirely different standpoint from many cases that are cited in the brief.

In the case at bar, the defendant has not plead suicide as an affirmative defense. Herein the plaintiff alleges death as caused by accident. The defendant denies that the death, within the meaning of the contract, was an accident.

A somewhat similar situation as is presented in the case at bar was presented in Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S. W. 1043, cited by defendant.

In the Griffith case, the widow was suing. The defendant had not plead affirmative defense of suicide. Concerning such situation Judge RAGLAND in the opinion says (l. c. 445):

". . . 'it is elementary, therefore, that the burden was upon her to establish this fact by the greater weight of the evidence. Plaintiff undertook this burden and by her evidence showed that the body of the insured . . . dropped to the pavement below under circumstances so equivocal that it would have been extremely difficult for the triers of facts to have determined from them alone . . . whether his death was accidental, or whether it was the result of an act intentionally done by him for the purpose of ending his life. Notwithstanding, this proof, aided by the presumption arising from the love of life, was sufficient to make out for plaintiff a *prima facie* case, and thereupon the burden of going forward with the evidence devolved upon the defendant. . . .'"

In the Griffith case, the defendant offered evidence to show that insured intentionally precipitated himself from the window. Such proof took the presumption out of the case. However, in the opinion the following is said (l. c. 445-446):

"'. . . While the "presumption" was gone, there remained of course the biological fact that all normal human beings love life and shrink from death. The recognition of the existence of this fact is a part of common knowledge. There was nothing, however, in either of the instructions that precluded the jury from weighing all the facts and circumstances in evidence in the light of this further fact, the instinct of self-preservation. It might have been proper for the court to have so instructed the jury, had it been requested to do so. But as that question is not in the case it would avail nothing to express an opinion with respect to it.'"

Whether or not the giving of an instruction on presumption of law be prejudicial error, depends on the evidence. If there is shown to be credible testimony that rebuts a presumption of law, then the giving of such an instruction, of course, is prejudicial error. If on the other hand, there appears no evidence that rebuts the presumption, prejudicial error cannot arise. [Brunswick v. Ins. Co., 278 Mo. 154, 213 S. W. 25.]

From a careful examination of the evidence before us in this case, we find no evidence of any movement or act, voluntary or involuntary, on the part of the deceased insured while he was on the third floor porch. When first seen, the insured was in the air being impelled by the law of gravitation. As to how deceased left the porch is not disclosed by any evidence; the presumption against suicide prevails.

When all of the evidence and all of the instructions given are considered, we conclude that the defendant had a fair trial, and that the judgment was for the right party.

Judgment affirmed. All concur.