BALLMER, ADMX., APPELLEE, *v.* PENNSYLVANIA RD. CO. ET AL., APPELLANTS.

(Decided February 21, 1938.)

*Messrs. Rupp & Hahn* and *Messrs. Holloway, Peppers & Romanoff*, for appellee.

*Messrs. Fraser, Effler, Shumaker & Winn*, for appellants.

CARPENTER, J. This was an action for the alleged wrongful death of Ralph Ballmer, brought by plaintiff, his widow, as administratrix of his estate against the defendants, the Pennsylvania Railroad Company as operating lessee, and the Pittsburgh, Fort Wayne & Chicago Railway Company as owner and lessor, of a double track railroad extending through the city of Bucyrus, Ohio.

About three o'clock on the bright afternoon of March 11, 1932, decedent, alone in his automobile, was driving north on Whetstone street in the eastern edge of that city. When he was crossing the northerly track of defendants' railroad, which there runs nearly east and west, he was hit and instantly killed by the locomotive of a west-bound passenger train which was traveling from sixty to seventy miles per hour in violation of an ordinance of that city limiting the speed of trains to twenty-five miles per hour. At that crossing the railroad had erected an electrically-operated automatic bell which was supposed to sound as a train approached within about a quarter of a mile from the crossing and continue until it had passed it. There were also the standard cross-arm danger warning signs on both sides of the tracks and these could be seen several hundred feet from the crossing.

Various allegations of negligence were made in the amended petition, but those presented by the evidence and relied upon by the plaintiff may be stated in two groups: One, the failure of the railroad to warn the decedent of the approach of the train, either by the statutory signals from the locomotive or safeguards at the crossing; the other group, that the speed of the train was excessive, especially in violation of the city ordinance.

There was slight negative evidence offered by plaintiff that the locomotive did not sound the statutory crossing signals by bell and whistle, and that the automatic crossing bell was not working at that time or a half hour before when another train passed. Opposed to this there was so much positive evidence that the usual train signals were given and that the crossing bell sounded, that the comment of this court in *Toledo & Indiana Rd. Co.* v. *Yhalkee*, 51 Ohio App., 378, 1 N. E. (2d), 163, on a similar state of proof is applicable, and it may well be said that this claim of negligence was not sustained. But even if this be not true, such omissions of duty only constituted acts of negligence. The existence of the city ordinance and its violation by the company in its operation of the train in question is undisputed, and hence the claim of negligence in this respect is admitted.

The defendants by answer pleaded the negligence of the decedent in failing to look and listen and to see the train coming and stop in time to avoid the collision, and they claim that on this issue of contributory negligence the trial court should have directed a verdict for them at the close of plaintiff's evidence, or at the close of all the evidence when their motion was renewed, and that not having been done, it should have granted their motion for judgment notwithstanding the verdict. The denial of these motions and other incidents in the trial are assigned as errors.

Whetstone street, which is improved with smooth macadam 16 feet wide, and the railroad tracks cross nearly at right angles, both are straight and nearly level, except that there is a gradual incline up from three to five feet to the tracks on the south approach. From a point twenty-eight feet south of the south rail of the west-bound track there is a clear and entirely unobstructed view to the east along the tracks for over a mile. South of that point there are, in places, some obstructions to the view to the east by buildings, and by trees and shrubs, which in March were not in foliage and hence only partially obstructed the view of a large object like a moving train. None of these obstructions to view were on the right of way of the railroads.

Many witnesses testified regarding the physical surroundings of the crossing and the view of the traveler on the street approaching from the south, and there were many photographs and two maps or drawings which aided in making such evidence clear and vivid to the court and jury.

There were six persons on the street who were eye-witnesses to the collision and testified at the trial. All agreed that the automobile the decedent was driving did not stop at any point as it approached the crossing, and some said it did not slacken its speed. The various estimates of that speed were from ten to forty-five miles per hour. Only one witness claimed to have observed the conduct of the decedent as he approached the crossing and he said Ballmer did not look either to the east or west as he drove upon the crossing, but that his head was bowed down in front all the time. That witness testified he stood sixty or seventy feet northwest of the place of collision at the time.

The claim of the plaintiff is that the decedent must be presumed to have exercised due care and that he did everything ordinary care required him to do, and that as he approached the crossing he looked and saw

the train coming but that he had a right to assume its operators were obeying the city ordinance and that it was not traveling more than twenty-five miles per hour, and if that had been true, he had ample time to cross the track before it reached the crossing.

In support of this claim plaintiff relies upon the principle announced in *Norris, Exrx., v. Jones, Recr.*, 110 Ohio St., 598, 144 N. E., 274, and the cases cited therein to support her contention. In the third paragraph of the syllabus the court says:

"A traveler upon a street in a village crossing the track of an interurban railway has a right to presume that the interurban railway will conform to an ordinance of the city council prohibiting the running of interurban cars through its limits at a rate of speed greater than that named in the ordinance. If the traveler acts in accordance with such presumption in the absence of knowledge of the fact that the interurban railway company is exceeding such speed limit in running an interurban car, such action upon the part of the traveler will not of itself constitute an act of negligence."

In the opinion the court says, at page 606:

"Not a scintilla of evidence tending to establish negligence on the part of decedent was offered by the plaintiff. The case is made even more favorable for the plaintiff in the defendant's side of the evidence, for some of defendant's witnesses gave testimony which directly warrants an inference that the decedent exercised due care."

In neither of these respects can these statements be made about the evidence in this case.

Whether this case controls the one at bar requires an analysis of this evidence and an examination of some of the more recent decisions of the Supreme Court. If we accept the presumption relied upon that decedent knew of the city ordinance and that he did

everything ordinary care required him to do, we must assume that "he both looked and listened for approaching trains at such time and place and in such manner as would make the looking and listening effective." *Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714. All witnesses testified that the train was making a very loud rumbling sound, and common knowledge tells us that must have been true.

Assuming that the decedent was traveling at the rate of forty-five miles per hour, the highest speed estimated by any witness, and the train at seventy miles per hour, the fastest rate given, when decedent was twenty-eight feet from the crossing the train was less than fifty from it. Or assuming decedent was traveling at the slowest speed estimated, ten miles per hour, and the train seventy miles per hour, when he was twenty-eight feet from the crossing it was less than two hundred feet away.

In view of the close proximity of the train under any situation that may be assumed from the evidence, and the noise it was making, can it be said that the decedent did look and listen as required by the standard set in the *Rohrs case, supra?*

Judge Kinkade, in the opinion in that case, at page 502, says:

"Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that anyone who looked would have seen, then, if he says he did not see, his own evidence establishes the fact that he did not look, though he may think he did. To hold otherwise would simply be a manifest absurdity, and the doctrine that the traveler in a vehicle upon the highway when coming to a railroad grade crossing must look and listen might as well

be abandoned if one so placed, in broad daylight, can say that he looked in a given direction where there was a locomotive moving toward the crossing, and not farther than 75 feet away, and that he could not see it.''

But it is urged that this is a death case and decedent is not here to testify. The presumption of due care with which the law invests such a deceased person means no more than that if he were here and could testify he would say he did the things ordinary care required him to do. Hence, giving Mr. Ballmer the full benefit of that presumption, if it leads to an absurd result under the undisputed physical facts, it makes no difference whether the case depends upon the testimony of an injured party, as in the *Rohrs case,* or the presumption in favor of the decedent in this case. *C., C., C. & St. L. Ry. Co.* v. *Lee, Admr.,* 111 Ohio St., 391, 145 N. E., 843, was a death case and negligence on the part of the railroad was admitted or proven, yet contributory negligence as a matter of law on the part of the decedent defeated recovery.

It is further urged that decedent did see the train and assumed it was not traveling to exceed twenty-five miles per hour as prescribed by the city ordinance. Such speed of the train was just a type of negligence on the part of the railroad. In the *Rohrs* and *Lee cases, supra,* and in *Pennsylvania Rd. Co.* v. *Rusynik,* 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538, and the many cases therein cited, negligence on the part of the railroad was assumed. It makes little difference whether a traveler relies upon an ordinance limiting speed, or the statute requiring warning signals to be given for his benefit, or both—he cannot ignore his own duty to use his faculties for his own protection.

In *Lamp* v. *Penna. Rd. Co.,* 305 Pa., 520, 158 A., 269, 84 A. L. R., 1217, that court, dealing with this presumption, said:

"Though this presumption is rebuttable, it is still a question for the jury to determine this fact, even though the evidence to the contrary is uncontradicted, when it depends solely on the oral testimony of witnesses, for it is essential that their credibility be passed upon. [Cases cited.]

"If, however, there be, in addition to oral testimony, indisputable physical conditions, indicated by actual measurements, maps, and photographs, the existence of a fact ordinarily presumed is negatived. [Cases cited.]

" 'The doctrine that a person losing his life must be presumed to have exercised due care has no application, where the evidence shows affirmatively the circumstances of the accident to the contrary.' "

As was said by this court in *T. & I. Rd. Co.* v. *Yhalkee, supra,* quoting an earlier Pennsylvania case, *Lessig* v. *Reading Transit & Light Co.,* 270 Pa., 299, 113 A., 381:

" 'A court cannot accept as true that which the indisputable evidence demonstrates is false.' "

From the evidence here it is apparent that, as Mr. Ballmer approached the fatal crossing, for several hundred feet the visible railroad tracks and the conspicuous cross-arm warning signs mutely challenged him to beware; and whatever he may have done in the way of looking and listening for trains as he approached in the space partially obstructed by the winter-nude trees and shrubs, when he arrived in the clear field he was at least twenty-eight feet from the crossing and under any possible circumstances the train must have been so close to him and making such noise that, if he was using any care at all, his danger must have been obvious to him.

In this age of numerous and often too speedy motor vehicles on the highways, our courts are not inclined

by their judgments to encourage highway travelers to engage in a race with death at railroad grade crossings.

As in the *Yhalkee case,* applying the rule in *Hamden Lodge* v. *Ohio Fuel Gas Co.,* 127 Ohio St., 469, 189 N. E., 246, and weighing all the evidence, including the presumption, reasonable minds can arrive at but one conclusion, that is, that decedent did not exercise ordinary care for his own safety and that his failure so to do contributed proximately to cause his death. That being true, the trial court should have directed a verdict for the defendants at the close of all the evidence, or not having done that, should have granted their motion for a judgment notwithstanding the verdict. Having arrived at this result, it is not necessary to consider the other errors assigned.

The judgment of the trial court is reversed and final judgment is entered for the defendants.

*Judgment reversed.*

LLOYD and OVERMYER, JJ., concur.