HALL, ADMX., APPELLANT, *v.* THE NEW YORK CENTRAL
RAILROAD CO., APPELLEE.*

(No. 736—Decided March 7, 1960.)

*Messrs. Freeman & Freeman*, for appellant.
*Messrs. Carpenter & Paffenbarger*, for appellee.

FESS, J. On this appeal on questions of law from a judgment entered upon a verdict of the jury directed by the court at the conclusion of the evidence, the circumstances surrounding the collision between defendant's train and the automobile driven by plaintiff's decedent are set forth in the dissenting opinion and are only supplemented herein.

With regard to the view of a driver of an automobile approaching the crossing, defendant's exhibit C, a photograph taken the day after the accident, discloses an unobstructed view

---

*Motion to certify the record overruled, September 21, 1960.

to the east from a point 15 feet north of the north rail of the westbound track for a distance beyond a signal tower located 900 feet to the east. In taking the photograph, the camera was held 4 to 5 feet above the roadway. The photograph shows a utility pole located 36 feet north of the northerly rail and a row of telegraph poles running 26 feet north of the northerly rail to the signal tower. The photograph also shows weeds and brush growing in the ditch alongside the track, which one of plaintiff's witnesses testified were hip-high.

The signal tower was located 15½ feet north of the north rail erected upon stilts, with the floor of the tower 15 feet above the ground, so that the engineer of the train, whose eyes would be 9 feet above the rails when the train was 1,000 feet from the crossing, observed decedent's automobile as it approached the crossing when its front end passed the utility pole 36 feet north of the north rail.

Upon cross-examination, one of plaintiff's witnesses, the engineer who prepared the lay-out, guessed that when standing upon the road approaching the tracks at a point 15 feet north of the tracks he could see east a distance of half a mile. With respect to the weeds, another witness for plaintiff testified there were some weeds along the track but none tall enough to obstruct the view. A highway patrolman called by the plaintiff testified that, until he drove his automobile to a point where the front of the vehicle would be five to seven feet away from the north rail, there were some obstructions to his view. But he did not specify the nature of such obstructions, other than to state that the weeds were down in the ditch and were hip-high and lower than certain signal-control boxes, which were four or five feet high. Upon cross-examination, when shown defendant's exhibit C, the witness said:

"Q. That morning when you stopped, according to your estimate, thirteen to fifteen feet north of the north rail and looked to the east was there any obstruction to your view toward the east along the west-bound track? A. I looked to see if I could see a train coming at that point; I could see a train from the tower; from the tower I could have seen a train.

"Q. Was there any obstruction between there and along the track? A. To some degree, from weeds and poles, but from the position I was in I could see back to the tower.

"Q. You had a clear view? A. To the tower.

"Q. Beyond those obstructions? A. Yes."

The engineer testified as follows:

"Q. All right now, what did he do with the operation of this car from that point on? A. From the time I first saw him, when he came into West Maple, he continued until he got approximately on this number one track on the westbound track and stopped right in the middle of it.

"Q. Now, when he stopped right in the middle of the westbound track, by that you mean his front wheels were over the south rail and the rear wheels were over the north rail? A. Yes.

"Q. When he stopped there where were you located with reference to the crossing? A. Just about at the tower." (900 feet east of the crossing.)

The fireman also observed the auto coming up to the track from Railroad Street. He testified as follows:

"Q. Then what happened when he got on the crossing with reference to his vehicle? A. It just stopped. It didn't jerk. If it had jerked or something I would have figured the car stalled maybe when he was shifting gears, but it didn't jerk; it just came to a smooth stop and the back wheels of the car were on, approximately on the northern rails and the front wheels were on the southern rails of our track.

"Q. Now, that was when you were about at the tower, is it not? A. Approximately, yes."

There was some testimony that the approach as well as the crossing was rough, but no evidence of ruts or other conditions to support an inference that the crossing itself was hazardous. Under the rule announced in *Hood, a Minor,* v. *New York, Chicago & St. Louis Rd. Co.*, 166 Ohio St., 529, 144 N. E. (2d), 104, there was sufficient evidence to present a question for the jury on the issue of failure to sound the whistle. In the light of the fact that the collision occurred in the vicinity of the village, a question for the jury may also have been presented with regard to the speed of the train.

But since decedent drove upon the crossing in the face of the approaching train, a majority of this court has the opinion that reasonable minds could not differ that his death was proximately caused by his undertaking to cross ahead of the train. It is

firmly established that the driver of a motor vehicle, about to pass over a railroad grade crossing on a public street, must exercise his senses of sight and hearing to discover whether trains are also about to pass over such crossing, and such exercise of the senses must be made at such time and place as to be effective for that purpose. *Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs*, 114 Ohio St., 493, 151 N. E., 714; *Patton* v. *Pennsylvania Rd. Co.*, 136 Ohio St., 159, 24 N. E. (2d), 597; *Woodworth, Admx.,* v. *New York Central Rd. Co.*, 149 Ohio St., 543, 80 N. E. (2d), 142; *Boles* v. *Baltimore & Ohio Rd. Co.*, 168 Ohio St., 551, 156 N. E. (2d), 735; *Ballmer, Admx.,* v. *Pennsylvania Rd. Co.*, 59 Ohio App., 221, 17 N. E. (2d), 435; *Lang, Admx.,* v. *Pennsylvania Rd. Co.*, 59 Ohio App., 345, 18 N. E. (2d), 271; *Continental Baking Co.* v. *Pennsylvania Rd. Co.*, 87 Ohio App., 505, 96 N. E. (2d), 258.

Plaintiff's decedent was clothed with the presumption of due care. But the plaintiff is aided by the presumption of due care, in the absence of evidence to the contrary, which presumption furnishes a substitute for actual evidence that the decedent exercised his sense of sight and looked for the approaching train. *Woodworth* v. *New York Central Rd. Co., supra,* page 549, citing *Maddex* v. *Columber,* 114 Ohio St., 178, 186, 151 N. E., 56; *Martin, Jr.,* v. *Heintz,* 26 Ohio St., 227, 230, 184 N. E., 852; *Troop A Riding Academy* v. *Miller,* 127 Ohio St., 545, 549, 189 N. E., 647. Or, as held by this court in *Ballmer* v. *Pennsylvania Rd. Co., supra,* in the syllabus:

"1. The presumption of due care with which the law invests a person killed in an accident means no more than that if he were present at the trial and could testify he would say he did the things ordinary care required him to do.

"2. Such presumption of due care may be negatived as a matter of law if the oral testimony and the undisputed physical conditions shown to have existed at the time and place were such that reasonable minds could reach no other conclusion than that the decedent did not exercise ordinary care."

But, it is urged that, inasmuch as the train was over a thousand feet away when decedent reached the crossing, within the nine-second period before the train would reach the crossing had decedent's vehicle not stopped, he would have had ample time

to have made the crossing in safety. This suggestion is somewhat akin to that made in the *Woodworth case* that lights surrounding the area confused decedent's vision to such an extent that even with the exercise of due care he was unable to observe the oncoming train in time to avoid the collision. The Supreme Court held that there arose no such presumption and that, in order to establish the claim for wrongful death because of such lights, there must have been proof, other than the mere circumstance of the presence of such lights, that they had rendered the motorist unable to distinguish the approaching train and were, therefore, the proximate cause of his death. See, also, *Boles* v. *Baltimore & Ohio, supra* (168 Ohio St., 551), wherein it was contended in the brief of plaintiff that patches of fog obscured the plaintiff driver's vision and that he was thereby confused.

Thus, the presumption of exercise of due care is overcome by evidence of circumstances such as failing to look and listen at a time and place to be effective. The rule seems to be clear that, when such inference of negligence arises, the burden is cast upon the plaintiff to rebut such inference. See *Baltimore & Ohio* v. *McClellan, Admx.*, 69 Ohio St., 142, 68 N. E., 816, and *Ziebro, Admx.*, v. *City of Cleveland*, 157 Ohio St., 489, 106 N. E. (2d), 161, holding that the burden is cast upon the plaintiff to dispel or counterbalance such inference or presumption. As succinctly stated by the Supreme Court of Texas in *Golf, Colorado & Santa Fe Ry. Co.* v. *Shieder*, 88 Tex., 152, 163, 30 S. W., 902:

"\* \* \* When the undisputed evidence adduced on the trial establishes prima facie, as a matter of law, contributory negligence on the part of plaintiff, then the burden of proof is upon him to show facts from which the jury, upon the whole case, may find him free from negligence; otherwise, the court may instruct a verdict for defendant, there being no issue of fact for the jury.''

In the instant case, for some unexplained reason, the unfortunate motorist, who nevertheless had control of the vehicle, thereby calling for the application of the *res ipsa loquitur* doctrine (*Scovanner* v. *Toelke*, 119 Ohio St., 256, 163 N. E., 493; *Weller, Exrx.*, v. *Worstall*, 129 Ohio St., 596, 196 N. E., 637; and *Manker* v. *Shaffer*, 161 Ohio St., 285, 118 N. E. [2d], 641), drove it upon the track in front of the approaching train and stopped.

Upon this state of the case, in the absence of evidence, the jury is not permitted to speculate either as to whether the decedent had time to cross or whether the car stopped on the tracks as a result of circumstances over which decedent had no control.

*Judgment affirmed.*

SMITH, J., concurs.

DEEDS, J., dissenting. This appeal is on questions of law from a judgment of the Court of Common Pleas, Huron County, entered following the verdict of a jury directed by the trial court at the conclusion of all the evidence.

The parties will be referred to herein as they appeared in the trial court, the appellant-administratrix as plaintiff, and the appellee, The New York Central Railroad Company, as defendant.

The action was for damages for the alleged wrongful death of plaintiff's decedent, as the result of an automobile-train collision occurring on June 22, 1958, at the intersection of Maple Street and the railway tracks of the defendant in the village of New London, Huron County, Ohio.

The defendant maintained two main lines of its railway extending in a general easterly and westerly direction, which intersected Maple Street, extending in a northerly and southerly direction.

The collision occurred at about 7:45 a. m. The day was clear and the visibility was good. The decedent operated his automobile on Maple Street and approached the tracks of the defendant from a northerly direction. The defendant's passenger train approached the intersection from an easterly direction at a speed of 78 or 80 miles an hour, and the collision occurred after decedent's automobile had come to a stop upon the northerly set of tracks.

The tracks of the railway were maintained about six feet above the general street level, so that the approach to the railway tracks on Maple Street from a northerly direction was on a rather steep incline.

The evidence discloses that there were certain obstructions

to the view of the operator of an automobile to the east until such operator had reached a point on Maple Street about 15 feet from the northerly rail of defendant's northerly set of tracks.

The obstructions to view consisted of a line of telephone poles located 26 feet north of the northerly set of tracks, a utility pole near the intersection, a tower 16 feet wide and 36 feet in length, located about 900 feet to the east of the intersection, and a coal shed 8 feet in width and 16 feet in length located west of the tower, extending parallel with the railway tracks. The tower was located 15½ feet north of the northerly set of tracks, and the coal shed was 18 feet north of that set of railway tracks.

The evidence of the defendant is to the effect that, when the operator seated in an automobile arrived at a place in Maple Street 15 feet in a northerly direction from the northerly rail of the northerly set of tracks, such operator would have a clear, unobstructed view to the east over the tracks for a considerable distance.

The evidence of the plaintiff in reference to obstructions to the view in an easterly direction is in conflict with the evidence of the defendant. Counsel for the plaintiff contend that a fair interpretation of the evidence indicates that the occupant of an automobile would not have a view to the east until the automobile had reached a point 5 feet north of the first rail of the northerly set of tracks. One of plaintiff's witnesses, a member of the State Highway Patrol, testified in reference to obstructions in part as follows:

"Q. Now, did you drive your automobile and stop at a point where you would have a clear view to the east, Mr. Nelson, or unobstructed view? A. I came west on Railroad Street and turned south and drove up over the crossing in the direction, as I drove up over the crossing I slowed down and observed to the east of the crossing and in the direction of the tower.

"Q. And then you continued across the crossing? A. Yes, sir.

"Q. How far at that point, how far from the north rail would you say you were located, that is, the front end of your vehicle—let's put it that way—the front end of your vehicle was located where when you had a clear view of the track to the east? A. That morning?

"Q. Yes, that morning.  A. The front of the vehicle would be five to seven feet back from the rail.

"Q. And until that point you did not have a clear, unobstructed view?  A. No, there were some obstructions there.

"Q. Now, did you ever measure how far back you sit from the front of your automobile, Mr. Nelson?  A. No, sir.

"Q. Well, let me make a suggestion, perhaps you sit about eight feet from your front bumper; would that sound about right?  A. Yes, sir.

"Q. So then you individually sitting in your car, at a point thirteen feet—if that estimate of mine of eight feet is correct—you are at a point thirteen feet from the north rail before you have an unobstructed view to the east; is that correct.  A. Yes, sir."

The principal and pertinent allegations of the plaintiff's petition charging negligence against the defendant are as follows:

"3. In that said defendant operated its train onto said crossing without sounding a whistle warning of the approach to said crossing.

"4. In that said defendant operated its train onto said crossing without ringing a bell to apprise this plaintiff's decedent of its approach to said crossing.

"5. In that said defendant failed to use any signal whatsoever to apprise persons approaching and using said crossing of the approach of its train to said crossing.

"6. In that said defendant operated its train at a rate of eighty (80) miles per hour."

By its answer to the petition of the plaintiff, the defendant admits that the decedent's death was caused by the collision between defendant's train and the automobile being operated by the decedent at the intersection of Maple Street and the railway tracks of the defendant, as alleged by the plaintiff.

Defendant denies that it was negligent and alleges that the death of the "decedent was directly and proximately caused by his own carelessness and negligence in failing to observe the approach of defendant's train, which prior to the collision was in plain sight of plaintiff's decedent and which had given due notice."

A motion by the defendant for a directed verdict at the close of plaintiff's case was overruled by the trial court.

There were no eye witnesses to the collision.

The engineer in charge of the diesel locomotive at the time of the collision testified, as upon cross-examination, in plaintiff's case in part as follows:

"Q. There is where you saw him? A. That's when I saw somebody was going to come up to the tracks.

"Q. Where was your locomotive at that time? A. Just about on the A. C. & Y. crossing.

"Q. Now, did you watch him from that time on? A. I watched him definitely from that time on.

"Q. All right now, what did he do with the operation of his car from that point on? A. From the time I first saw him, when he came into West Maple, he continued until he got approximately on this number one track on the westbound track and stopped right in the middle of it.

"Q. Now, when he stopped right in the middle of the westbound track, by that you mean his front wheels were over the south rail and the rear wheels were over the north rail? A. Yes.

"Q. When he stopped there where were you located with reference to the crossing? A. Just about at the tower.

"Q. You were just about at the tower? A. Just about at the tower, yes.

"Q. And do you know how far away the tower is? A. I will say approximately nine hundred feet, about nine hundred feet."

The defendant's fireman corroborated the testimony of the engineer with respect to the operation of the decedent's automobile as it approached and came to a stop on the northerly set of tracks.

Five witnesses testified that they heard no signal or whistle by or from the locomotive before the collision.

One of those witnesses was a passenger on the train which collided with decedent's automobile, and two or more of the other witnesses for the plaintiff were near the crossing in a position to hear the whistle if it had been sounded.

Two or more of defendant's trainmen in charge of the train testified that the whistle was sounded at the whistling post as required by statute.

Other witnesses testified on behalf of the defendant that they heard a whistle sounded by the locomotive, but they did not testify as to where the engine was with reference to the Maple Street crossing when they heard the whistle.

It is my view that the rule of law applicable to the negative evidence concerning the absence of signals is stated in *Hicks, Admr., v. Baltimore & Ohio Rd. Co.*, 160 Ohio St., 307, at page 309, 116 N. E. (2d), 307, as follows:

"In a railroad crossing collision case, negative testimony is proper where it tends to prove that bells were not rung or whistles sounded. Such testimony may be by witnesses who were near the crossing at the time of the accident and to the effect that they did not hear any bell or whistle. See *Hocking Valley Ry. Co. v. Wykle, Jr., a Minor*, 122 Ohio St., 391, 397, 171 N. E., 860, and *Cincinnati, Indianapolis, St. Louis & Chicago Rd. Co. v. Howard*, 124 Ind., 280, 24 N. E., 892, 19 Am. St. Rep., 96, 8 L. R. A., 593.

"However, such testimony to have any probative value must be by witnesses who were in a position to know or hear. * * *"

Also, see, *Hood, a Minor, v. New York, Chicago & St. Louis Rd. Co.*, 166 Ohio St., 529, 144 N. E. (2d), 104; *Ratliff, Admr., v. Baltimore & Ohio Rd. Co.*, 109 Ohio App., 177, 164 N. E. (2d), 438, motion to certify the record overruled, July 1, 1959.

The engineer in charge of the locomotive testified that the whistle was sounded at the whistling post, when the engine was about 1,600 feet east of the Maple Street crossing.

The decedent is presumed to have been in the exercise of ordinary care as he operated the automobile as it approached and went upon the tracks of the defendant, unless there is evidence which tends to show that he was not exercising ordinary care. Since the undisputed testimony of the engineer is that, when the automobile stopped upon the northerly set of tracks, the engine of the train was 900 feet to the east of the crossing, we are bound to assume that the engine was a substantially greater distance east of the crossing when the automobile was approaching, and was being operated upon the northerly set of tracks.

The testimony of the engineer is to the effect that, when the

automobile came to a stop, the forward wheels of the auto were over the southerly rail and the rear wheels were over the northerly rail of the northerly set of tracks.

The decedent may have looked and listened for an approaching train as the automobile was being operated toward and upon the northerly set of tracks, when the engine of the train was probably 1,200 or 1,500 feet, or more, in an easterly direction from the Maple Street crossing. The engineer testified that when the forward wheels of the automobile had reached beyond the southerly rail the engine was still 900 feet to the east of the intersection. If the decedent looked to the east when approaching the tracks and saw no train approaching within a distance of 1,000 feet, it can not be said that he would be guilty of negligence as a matter of law in continuing to operate the automobile upon the tracks. Except for the unexplained stopping of the automobile, the decedent would have been safe in crossing the tracks. The rule applicable is found in *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Kuhl, Admx.*, 123 Ohio St., 552, at pages 558 and 559, 176 N. E., 222: ''The law does not prescribe the exact point at which the traveller on the highway is to look and listen.''

It is presumed that the decedent did look and listen as a reasonably prudent person would do under the same or similar circumstances.

The rule governing the presumption that the decedent was in the exercise of ordinary care is stated in paragraph five of the syllabus of *Bush, Admr.*, v. *Harvey Transfer Co.*, 146 Ohio St., 657, 67 N. E. (2d), 851, as follows:

''5. Neither negligence nor contributory negligence is presumed. On the contrary, there is a presumption that a decedent, prior to his death caused by a collision of a vehicle of another in which he was riding as a guest, was acting as a person of ordinary care and prudence would have acted under the same or similar circumstances. To warrant the submission of the issue of contributory negligence to the jury it is essential that some evidence be adduced tending to show that the plaintiff failed in some respect to exercise the care of an ordinarily prudent person under the same or similar circumstances and that such failure was a proximate cause of his injury and resulting death.''

The rule is stated in the opinion by Hart, J., in *Shepherd* v. *Midland Mutual Life Ins. Co.*, 152 Ohio St., 6, 87 N. E. (2d), 156, at pages 14, 15 and 16, as follows:

"A presumption of law is a procedural device which takes the place of evidence in certain cases until the facts in lieu of which the presumption operates are shown. It is equivalent to a substantive rule of law to the effect that a particular fact must be assumed when another particular fact or group of facts exist, or there is substantial evidence of such particular facts, unless and until the truth of the assumed fact is disproved. *New York Life Ins. Co.* v. *Gamer, Exrx.*, 303 U. S., 161, 82 L. Ed., 726, 58 S. Ct., 500, 114 A. L. R., 1218. The presumption imputes to certain facts or group of facts a certain prima facie significance or operation. It casts upon him against whom it operates the duty of meeting this imputation. Should nothing further be adduced it settles the question involved in a certain way. It serves to establish a prima facie case.

"One of the well recognized presumptions of the law is that, where it is shown that death resulted from bodily injury caused by violent and external means without a showing as to how the injury was in fact sustained, there is a presumption that death did not result from suicide, self-infliction of injury, criminal assault of another, or voluntary employment of the means causing death. *Hassay* v. *Metropolitan Life Ins. Co.*, 140 Ohio St., 266, 43 N. E. (2d), 229; *Hrybar* v. *Metropolitan Life Ins. Co.*, 140 Ohio St., 437, 45 N. E. (2d), 114; *Missouri State Life Ins. Co.* v. *Roper*, 44 F. (2d), 897; *Aetna Life Ins. Co.* v. *Newbern*, 127 F. (2d), 171; *Parfet* v. *Kansas City Life Ins. Co.*, 128 F. (2d), 361; *Wilkinson, Exrx.,* v. *Aetna Life Ins. Co.*, 240 Ill., 205, 88 N. E., 550, 25 L. R. A. (N. S.), 1256, 130 Am. St. Rep., 269; *Konscak* v. *Equitable Life Assurance Society of the United States*, 186 Minn., 423, 243 N. W., 691; *Krema* v. *Great Northern Life Ins. Co.*, 204 Minn., 186, 282 N. W., 822; *Hornby, Admr.*, v. *State Life Ins. Co.*, 106 Neb., 575, 184 N. W., 84, 18 A. L. R., 106; *Prudential Ins. Co. of America* v. *Tidwell*, 163 Okla., 39, 21 P. (2d), 28; *Graham* v. *New York Life Ins. Co.*, 182 Wash., 612, 47 P. (2d), 1029; *Beckley National Exchange Bank, Admr.,* v. *Provident Life & Accident Ins. Co.,* 121 W. Va., 152, 2 S. E. (2d), 256; *McNaught* v. *New York Life Ins. Co.*, 143 Neb., 220, 12 N. W.

(2d), 108; *Stuckum* v. *Metropolitan Life Ins. Co.*, 283 Mich., 297, 277 N. W., 891; *Basham* v. *Prudential Ins. Co. of America*, 232 Mo. App., 782, 789, 113 S. W. (2d), 126, 131; *Grosvenor* v. *Fidelity & Casualty Co.*, 102 Neb., 629, 168 N. W., 596; *Burnham* v. *Interstate Casualty Co.*, 117 Mich., 142, 75 N. W., 445. And even though it is shown that the injuries causing death were received at the hands of another, the presumption is that such injuries were accidentally rather than intentionally inflicted. *Olson* v. *Southern Surety Co.*, 201 Iowa, 1334, 208 N. W., 213; *Kansas City Life Ins. Co.* v. *Nipper*, 174 Okla., 634, 51 P. (2d), 741. The reason generally assigned for the recognition of this presumption in the law is that it is man's natural instinct to avoid injury and preserve life; that it is highly improbable that he will intentionally take his own life or inflict injury upon himself; and that ordinarily a third person will not intentionally and criminally inflict injury upon another.''

The writer recognizes that the situation and questions involved in *Shepherd* v. *Midland Mutual Life Ins. Co., supra* (152 Ohio St., 6), are not entirely analogous to the situation presented by the record in the case at bar, nevertheless, it seems clear that the rule as stated in the *Shepherd case, supra*, is applicable in considering whether the decedent was in the exercise of ordinary care in the situation as presented by the record in this case.

There is substantial evidence in the record that the defendant failed to sound a whistle which would warn the decedent of the approach of the train to the Maple Street crossing, as required by law. Sections 4955.32 and 4999.04, Revised Code.

The testimony of the engineer indicates clearly that the automobile was being operated at a low rate of speed as it approached and was operated upon the northerly set of tracks. There is no evidence that the decedent failed to look or listen for an approaching train before he operated the automobile to the place where it came to a standstill.

The defendant had the burden of proving contributory negligence on the part of the decedent.

There is no evidence in the record tending to show what caused the automobile to come to a stop on the northerly set of tracks.

Without evidence, the court or jury could not infer that the

automobile came to a stop as the result of negligence on the part of the decedent.

The evidence in the record tends to establish that the defendant was negligent in failing to sound a whistle at the place and in the manner as required by law.

It is my view that a verdict should not have been directed in favor of the defendant. There being no evidence tending to prove contributory negligence, and evidence tending to prove negligence against the defendant, the proximate cause of the collision was a question of fact to be determined by a jury. The plaintiff maintained the burden by producing evidence which tended to establish negligence against the defendant, in its failure to sound a signal as required by law. It is my conclusion that the judgment of the Court of Common Pleas should be reversed and the cause should be remanded for a new trial. *Burnham* v. *Warner Elevator Mfg. Co.*, 166 Ohio St., 31, at page 36, 139 N. E. (2d), 10.